IN THE CIRCUIT COURT OF THE
16TH JUDICIAL CIRCUIT IN AND FOR
MONROE COUNTY, FLORIDA

MMI82 LLC d/b/a CASA MORADA,

CASE NO.:

        Plaintiff,

v.

ARCH SPECIALTY INSURANCE
COMPANY,

        Defendant.

_____/

## COMPLAINT

Plaintiff, MMI82 LLC d/b/a CASA MORADA (the "Insured"), hereby sues Defendant,

ARCH SPECIALTY INSURANCE COMPANY (the "Insurance Company"), and alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1.      This is an action for damages that exceeds Fifteen Thousand and 00/100 Dollars

($15,000.00), exclusive of interest, costs and attorney's fees and equitable relief by way of a

Declaratory Judgment Action.

2.      The Insured is an individual who at all times material hereto has resided in Monroe

County, Florida.

3.      The Insurance Company is a Florida corporation qualified to do business in Florida

and has, at all times material hereto, been conducting business in Monroe County, Florida.

4.      Venue is proper in Monroe County, Florida because the contract, which forms the

subject matter of this lawsuit, was executed in Monroe County, Florida.

[1986331/1]

EXHIBIT
1 Composite

5. All conditions precedent to the filing of this lawsuit have occurred, have been waived or have been performed.

## GENERAL ALLEGATIONS

6. At all times material hereto, in consideration of a premium paid by the Insured, there was in full force and effect a certain homeowners insurance policy issued by the Insurance Company with a policy number of ESP 73037120 "A true and correct copy of policy is attached hereto as Exhibit "A" (the "Policy").

7. The damaged property is located at 136 Madeira Rd, Islamorada, FL 33065 (the "Property").

8. Pursuant to the terms of the Policy, the Insurance Company agreed to provide insurance coverage to the Insured's Property for all risks unless specifically excluded by the terms of the Policy.

9. On or about September 10, 2017, while the Policy was in full force and effect, the Property sustained a covered loss as a result of hurricane Irma (the "Loss").

10. The Insurance Company assigned claim number 000013114410 to the Loss.

11. The Insurance Company acknowledged that the Property sustained a covered Loss and offered payment.

12. However, after diligent inspection of the Loss, it was obvious that the Property sustained covered damages greater than the damages acknowledged by the Insurance Company.

13. The Insurance Company's finalization of its duty to adjust the loss with the Insured is a condition precedent for the Insured to receive the insurance benefits that they are entitled to under the terms of the Policy.

[1986331/1]

14.     As of the date of the filing of this lawsuit, the Insurance Company has failed to acknowledge that additional payment would be forthcoming and it has failed to adequately provide coverage under the terms of the Policy. As a result of the foregoing, the Insurance Company has breached the Policy.

15.     The Insured has suffered and continues to suffer damages resulting from Insurance Company's breach of the Policy.

16.     The Insured has been obligated to retain the undersigned attorneys for the prosecution of this action and is entitled to a reasonable attorney's fee pursuant to Florida Statute Section 627.428.

## COUNT I
## BREACH OF CONTRACT

17.     The Insured reincorporates paragraphs 1 through 16 as if fully set forth herein.

18.     It is undisputed that the Insured and the Insurance Company entered into a written contract, the Policy, wherein the Insured agreed to pay a premium and the Insurance Company agreed to insure the Insured's Property.

19.     The Insured has paid all premiums due and owing as contemplated by the Policy; thus, fully performing obligations under the Policy.

20.     The Insured's Property sustained damage which the Insurance Company agreed to provide coverage for under the terms of the Policy.

21.     Furthermore, at all times material hereto, the Insured has satisfied all post-loss obligations accorded in the Policy, including but not limited to: (i) protecting the Property from further loss; (ii) making reasonable and necessary repairs to protect the Property; and (iii) keeping

an accurate record of the repairs expenses. Accordingly, the Insured has made diligent effort to complete reasonable repairs to the Property and has mitigated the damages sustained.

22.     In contrast, the Insurance Company has failed to: (i) provide coverage for the Loss under the terms of the Policy; and/or (ii) acknowledge that additional payment would be forthcoming; and/or (iii) make adequate payment of insurance proceeds to the Insured.  As a result of the foregoing, the Insurance Company has breached the Policy.

23.     As a direct and proximate result of the Insurance Company's breach of the Policy, the Insured has sustained damages.

WHEREFORE, the Insured respectfully requests that this Court enters judgment against the Insurance Company for damages, plus interest, court costs and reasonable attorney's fees pursuant to Section 627.428, Florida Statutes.

## COUNT II
## DECLARATORY JUDGMENT

25.     The Insured reincorporates paragraphs 1 through 16 as if fully set forth herein.

26.     Pursuant to Chapter 86, Florida Statues, the Insured seeks a declaratory judgment that:

      a.     complied with the duties imposed upon under the Policy and/or that has been excused from performing any such duties; and

      b.     the Insurance Company's breach of the Policy by failing to properly adjust and pay the Insured, notwithstanding a clear obligation to do so, excuses the Insured from having to comply with any further demands by the Insurance Company for compliance with the Policy. To the extent the Court determines that the Insurance Company is entitled to any further compliance by the Insured with the Policy, the Court should issue a declaratory judgment that specifies what obligations the Insured has and afford the Insured an opportunity to comply with any such obligations.

[1986331/1]

27. The Insurance Company inspected the Property.

28. Based upon its improper adjustment of the Insured's claim, the Insurance Company failed to issue payment in the proper amount to the Insured.

29. The Insurance Company continues to fail to fully compensate the Insured for loss.

**Need for Declaratory Relief**

30. The Insured believes is in full compliance with the terms and conditions of the Policy.

31. The Insured also believes that no further policy compliance is required as a result of the Insurance Company's breach of the Policy by failing to properly adjust and pay the Insured's claim.

32. The Insured is entitled to have removed by judicial decree all doubts raised by the Insurance Company concerning whether the Insured has complied with the duties imposed upon under the Policy and the validity of the Insurance Company's demands under the Policy.

33. There is a bona fide, present, and actual need of the Insured for a declaration of the aforementioned rights, and the coverage position of the Insurance Company has raised doubt and insecurity about the rights of the Insured as to whether is in compliance with the terms and conditions of the Policy.

34. The Insured retained the undersigned attorneys to represent in this action and is required to pay them a reasonable fee for their services.

WHEREFORE, the Insured requests that the Court enter a declaratory judgment that: (a) the Insured has complied with the duties imposed upon by the Policy and (b) the Insurance Company's breaches of the Policy excuse any further Policy compliance by the Insured; and award the Insured reasonable attorneys' fees under Section 627.428, Florida Statutes, along with costs and such other

[1986331/1]

relief as the Court deems appropriate.  Alternatively, the Court should issue a declaration which specifies the Policy compliance still required and afford the Insured the opportunity to comply with any such requirements.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated this 23rd day of May 2018.

Respectfully submitted,

**Marin, Eljaiek, Lopez & Martinez P.L.**
Counsel for the Insured
2601 South Bayshore Drive, 18th Floor
Coconut Grove, Florida 33133
Telephone No. (305) 444-5969
Facsimile No. (305) 444-1939
Email: Eservice@mellawyers.com
Secondary Email: Mellaw4@mellawyers.com

By: /s/ Joe DePrado
    Anthony M. Lopez, Esq.
    Florida Bar No. 13685
    Joe DePrado, Esq.
    Florida Bar No. 0127312

[1986331/1]

## SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.



### ARCH SPECIALTY INSURANCE CO.

(A Missouri Corporation)

Home Office Address:

2345 Grand Blvd. Suite 900
Kansas City, MO 64108

Administrative Address:

1125 Sanctuary Parkway
Suite 200
Alpharetta, GA 30009
Tel: (404) 682-3636

## FLORIDA COMMERCIAL PROPERTY

## DECLARATIONS

## THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE OR WIND LOSSES, WHICH MAY RESULT IN HIGH OUT – OF – POCKET EXPENSES TO YOU.

**Policy Number:**   ESP 7303712-00

**Named Insured:**   MMI 82 LLC, CASA MORADA

**Address:**   136 MADEIRA RD
ISLAMORADA, FL 33036

Policy Period:
From:  March 15, 2017   **To:**  March 15, 2018
at 12:01 A.M., Standard Time at your mailing address shown above.

**THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**

| Commercial Property Coverage Part | PREMIUM |
|---|---|
|  | $39,978.00 |
|  | **Total**  $39,978.00 |

Premium Shown is payable at inception.

**LOCATIONS COVERED:** Refer to Schedule of Locations

**FORMS AND ENDORSEMENTS Applying to this Coverage Part and Made Part of this Policy at Time of Issue:** See attached Schedule of Forms and Endorsements.

**ISSUE DATE:** April 20, 2017

## EXHIBIT A

TRUE AND CERTIFIED COPY

| | |
|---|---|
| **Surplus Lines Agent Name:** | CHRISTOPHER SIEGEL |
| **Surplus Lines Mailing Address:** | 18302 Highwoods Preserve Parkw<br>Suite 310<br>Tampa, FL  33647 |

| | |
|---|---|
| **Surplus Lines Agent License:** | E169916 |
| **Surplus Lines State Taxes were filed:** | FL |

Arch Specialty Insurance Company is licensed in the state of Missouri only.

## SCHEDULE OF FORMS AND ENDORSEMENTS

| NAMED INSURED: MMI 82 LLC, CASA MORADA | TERM: March 15, 2017 | to March 15, 2018 |
|---|---|---|
| POLICY NUMBER: ESP 7303712-00 | | |

| ENDT. NO. | FORM NO. | TITLE |
|---|---|---|
| | 06 ML0002 00 12 14 | SIGNATURE PAGE (ARCH SPECIALTY) |
| 1 | 00 EXP0009 00 11 14 | MINIMUM EARNED PREMIUM CLAUSE - PERCENTAGE |
| | 00 EXP0091 00 11 03 | COMMON POLICY CONDITIONS |
| 2 | 00 ML0003 00 04 12 | SERVICE OF SUIT |
| | 06 CP0002 00 03 08 | CLAIMS HANDLING PROCEDURES (Arch Specialty Ins. Co.) |
| 3 | 00 EXP0125 00 06 06 | TOTAL TERRORISM EXCLUSION |
| | 00 ML0065 00 06 07 | U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") |
| 4 | 00 EXP0078 00 01 16 | OCCURRENCE LIMIT OF LIABILITY ENDORSEMENT |
| 5 | 00 EXP0003 00 08 14 | EXCLUSION AND LIMITED ADDITIONAL COVERAGE FOR FUNGUS |
| 6 | 00 EXP0004 00 08 15 | ELECTRONIC DATA LOSS OR DAMAGE - EXCLUSION |
| 7 | 00 EXP0189 00 02 15 | ASBESTOS MATERIAL REMOVAL LIMITATION |
| 8 | 00 EXP0190 00 02 15 | AUTHORITIES EXCLUSION |
| 9 | 00 EXP0192 00 03 15 | EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA |
| | 02 EXPD 00 09 02 | COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS |
| | 00 EXP0092 00 04 16 | BUILDING AND PERSONAL PROPERTY COVERAGE FORM |
| | 00 EXP0094 00 08 14 | BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM |
| 10 | 00 EXP0051 00 08 14 | NAMED WINDSTORM DEFINITION ENDORSEMENT |
| 11 | 00 EXP0195 00 03 15 | NAMED WINDSTORM PERCENTAGE DEDUCTIBLE ENDORSEMENT (REPORTED VALUE) |
| | 00 EXP0100 00 08 14 | CAUSES OF LOSS - SPECIAL FORM |
| 12 | 00 EXP0185 00 11 14 | EXTERIOR INSULATION AND FINISH SYSTEM (EIFS) EXCLUSION |

00 ML0012 00 01 03

| ENDT. NO. | FORM NO. | TITLE |
|-----------|----------|-------|
| 13 | 00 EXP0081 00 08 14 | WARRANTIES |
| | 00 EXP0101 00 08 14 | COMMERCIAL PROPERTY CONDITIONS |



Signature Page

IN WITNESS WHEREOF, Arch Insurance Company has caused this policy to be executed and attested.

John Mentz
President

Patrick Nails
Secretary

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**MINIMUM EARNED PREMIUM CLAUSE – PERCENTAGE**

This endorsement modifies insurance provided under this policy.

It is agreed that in the event of cancellation of this policy by you, a minimum premium of 35% minimum earned premium except 100% of the wind/hail premium of $32,319 shall be considered fully earned if the policy has been in force anytime between the dates of June 1 to November 30 of the original policy premium shall become earned; any conditions of the policy to the contrary notwithstanding.

Your failure to make timely payment of premium shall be considered a request by you for us to cancel.  In the event of such cancellation by us for non-payment of premium, the minimum premium shall be due and payable; provided, however, such non-payment cancellation shall be rescinded if you remit the full premium due within ten (10) days of receiving it.

In the event of any other cancellation by us, the earned premium shall be computed pro rata, not subject to the minimum premium.

All other terms and conditions of this policy remain unchanged.

Endorsement Number: 1

Policy Number: ESP 7303712-00

Named Insured: MMI 82 LLC, CASA MORADA

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: March 15, 2017

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A.    Cancellation**

1.    The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2.    We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

    **a.**    10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    **b.**    30 days before the effective date of cancellation if we cancel for any other reason.

3.    We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4.    Notice of cancellation will state the effective date of cancellation.  The policy period will end on that date.

5.    If this policy is cancelled, we will send the first Named Insured any premium refund due.  If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata.  The cancellation will be effective even if we have not made or offered a refund.

6.    If notice is mailed, proof of mailing will be sufficient proof of notice.

**B.    Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent.  This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C.    Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D.    Inspections And Surveys**

1.    We have the right to:

    **a.**    Make inspections and surveys at any time;

    **b.**    Give you reports on the conditions we find; and

    **c.**    Recommend changes.

2.    We are not obligated to make any inspection, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections.  We do not undertake to perform the duty of any person

or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   **a.**   Are safe or healthful; or

   **b.**   Comply with laws, regulations, codes or standards.

   **3.**   Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

   **4.**   Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E.**   **Premiums**

The first Named Insured shown in the Declarations:

   **1.**   Is responsible for the payment of all premiums; and

   **2.**   Will be the payee for any return premiums we pay.

**F.**   **Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**SERVICE OF SUIT**

It is agreed that:

1.      In the event of the failure of the **Insurer** to pay any amount claimed to be due hereunder, the **Insurer**, at the request of the **Insured**, will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction.  All matters arising under this Policy shall be determined in accordance with the law and practice of such Court, provided that nothing shall prohibit the **Insurer** from removing any action, suit or proceeding to a United States District Court.  The **Insurer** shall abide by the final decision of such court or any appellate court in the event of an appeal.

2.      Service of process in the above described action, suit or proceeding may be made upon: General Counsel, Arch Specialty Insurance Company, Harborside 3 210 Hudson Street, Suite 300 Jersey City, NJ 07311-1107.  Upon the request of the **Insured**, such General Counsel shall give a written undertaking to enter an appearance on behalf of the **Insurer** in the event that such an action, suit or proceeding shall be instituted.

3.      Pursuant to any statute of any state, territory or district of the United States which makes provision therefore, the **Insurer** hereby designates the Superintendent, Commissioner, or Director of Insurance or other officer specified in such statute as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted against the **Insurer** upon this Policy.  The Superintendent, Commissioner or Director of Insurance or other officer is hereby authorized and directed to accept service of process on behalf of the **Insurer** in any such action, suit or proceeding and to mail a copy of such process to the above mentioned General Counsel.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 2

Policy Number: ESP 7303712-00

Named Insured: MMI 82 LLC, CASA MORADA

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: March 15, 2017

## Claims Handling Procedures

An important value of your insurance coverage is the ability of the insurance company to respond when you have a claim.  Arch Specialty Insurance Company is committed to providing its insureds with effective claim services.

Notices of each incident, claim or suit must be sent immediately to:

Arch Specialty Insurance Co.
E & S Property Claims
1299 Farnam Street, Suite 500
Omaha, NE  68102
P.O. Box 542033
Omaha, NE  68154
Phone:  877 688-ARCH (2724)
Fax:  866 266-3630
E-mail:  Claims@ArchInsurance.com

You will be contacted by a representative of the company's Claim Department.  This representative will confirm receipt of the loss notice directly to you, provide a company claim number for all future correspondence, refer to an adjuster if necessary, and discuss further handling of the claim.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**TOTAL TERRORISM EXCLUSION**

This endorsement modifies insurance provided under the Policy.

**A.**   The following definition is added and applies under this endorsement whenever the term terrorism, is enclosed in quotation marks:

"Terrorism" means activities against persons, organizations or property of any nature:

    **1.**   that involve the following or preparation for the following:

        **a.**   use or threat of force or violence; or

        **b.**   commission or threat of a dangerous act; or

        **c.**   commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

    **2.**   When:

        **a.**   the effect is to intimidate or coerce a government or a civilian population or any segment thereof, or to disrupt any segment of the economy; and/or

        **b.**   it appears that the intent is to intimidate or coerce a government or a civilian population, or to further a philosophical, political, ideological, religious, social or economic objective or to express (or express opposition to) a philosophical, political, ideological, religious, social or economic objective.

**B.**   The following exclusion is added:

**EXCLUSION OF TERRORISM**

We (the Company) will not pay for loss or damage caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such loss or damage.

This exclusion also applies when one or more of the following are attributed to an incident of "terrorism":

    **1.**   The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

    **2.**   Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

    **3.**   The "terrorism" involves the use, release, or escape of nuclear materials, or that directly or indirectly results in nuclear reaction, nuclear radiation or radioactive contamination; or

    **4.**   The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

5. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

**C.  Application Of Other Exclusions**

1. When the EXCLUSION OF TERRORISM applies in accordance with the terms of **B.1.**, **B.2.** or **B.3.**, such exclusion applies without regard to the Nuclear Hazard Exclusion in this Coverage Form, Coverage Part or Policy.

2. The EXCLUSION OF TERRORISM contained in this Endorsement replaces any terrorism exclusion contained in this Coverage Form, Coverage Part or Policy.

3. The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss or damage which would otherwise be excluded under this Coverage Form, Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion, War Exclusion, or the War And Military Action Exclusion.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 3

Policy Number: ESP 7303712-00

Named Insured: MMI 82 LLC, CASA MORADA

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: March 15, 2017

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**OCCURRENCE LIMIT OF LIABILITY ENDORSEMENT**

This endorsement modifies insurance provided under this policy.

It is agreed that the following special terms and conditions apply to this policy:

1.    The DEFINITIONS Section of the policy and any forms or endorsements attached thereto are amended by the addition of the following Definition:

"Occurrence" shall mean any one loss, disaster, casualty or series of losses, disasters or casualties, arising out of one event.  The duration and extent of any one loss, disaster, casualty or series of losses, disasters or casualties will be limited to all losses or series of losses occurring during any period of 168 consecutive hours arising out of, and directly occasioned by, the same event.

When the term applies to loss or series of losses from the perils of tornado, cyclone, hurricane, windstorm, hail, flood, earthquake, volcanic eruption, riot, riot attending a strike, civil commotion, and vandalism and malicious mischief, one event shall be construed to be all losses arising during a continuous period of 72 hours.  When filing proof of loss, you may elect the moment at which the 72 hour period shall be deemed to have commenced, which shall not be earlier than when the first loss occurs to any Covered Property.

2.    The premium for this policy is based upon the Statement of Values on file with us, or attached to this policy. In the event of loss hereunder, our liability, subject to the terms of paragraph **3.** below, shall be limited to the least of the following:

a.    The actual adjusted amount of loss, less applicable deductible(s).

b.    100% of the individually stated value for each scheduled item of interest insured, as shown on the latest Statement of Values on file with us, or attached to this policy, after applying the deductible(s).

c.    The Limit of Liability or Amount of Insurance shown on the Declarations Page or endorsed onto this policy.

3.    The Limit of Liability or Amount of Insurance shown on the Declarations Page of this policy, or endorsed onto this policy, is the total limit of our liability applicable to each "occurrence". Notwithstanding any other terms and conditions of this policy, in no event shall our liability exceed this limit or amount, irrespective of the number of locations involved.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 4

Policy Number: ESP 7303712-00

Named Insured: MMI 82 LLC, CASA MORADA

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: March 15, 2017

00 EXP0078 00 01 16                                                                                                   Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**EXCLUSION AND LIMITED ADDITIONAL COVERAGE FOR FUNGUS**

This endorsement modifies insurance provided under this policy.

**A.**  The following item is added to **EXCLUSIONS,** section **B.**  With respect to the loss or damage addressed therein, this exclusion supersedes any other exclusion which addresses fungus.

**EXCLUSION – "Fungus", Wet Rot, Dry Rot And Bacteria**

We will not pay for loss or damage caused directly or indirectly by the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

But if "fungus", wet or dry rot or bacteria results in:

**1.**  A "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss", if the Causes of Loss – Special Form applies; or

**2.**  A "covered cause of loss", we will pay for the loss or damage caused by that "covered cause of loss", if the Causes of Loss – Basic Form and Causes of Loss – Broad Form applies.

This exclusion does not apply:

**1.**  When "fungus", wet or dry rot or bacteria results from fire or lightning; or

**2.**  To the extent that coverage is provided in the Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria with respect to loss or damage by a cause of loss other than fire or lightning.

**B.**  The following exclusion replaces any exclusion pertaining to continuous or repeated seepage or leakage of water; and supersedes any other exclusion, preclusion of coverage or exception to an exclusion pertaining to leakage or discharge of water or steam from a system or appliance.

We will not pay for loss or damage cause by or resulting from continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**C.**  The following item is added to **ADDITIONAL COVERAGES:**

**ADDITIONAL COVERAGE – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria**

**1.**  This limited coverage applies only when the "fungus", wet or dry rot or bacteria are the result of one or more of the following causes that occur during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that "occurrence", and only if any loss resulting from the following is reported to us within 60 days of the "occurrence":

**a.**  A "specified cause of loss" other than fire or lightning; or

**b.**  Flood, if the Flood Coverage Endorsement applies to the affected premises.

This Additional Coverage does not apply to lawns, trees, shrubs or plants which are a part of a vegetated roof.

2.     Under conditions described in item **A.1.** above, we will pay for loss or damage by "fungus", wet or dry rot or bacteria.  As used in this Limited Coverage, the term loss or damage means:

    a.     Direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including the cost of removal of the "fungus", wet or dry rot or bacteria;

    b.     The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and

    c.     The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present.

3.     The coverage provided under this Limited Coverage is limited to $15,000.  Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all "occurrences" which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular "occurrence" of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungus", wet or dry rot or bacteria continue to be present or active, or recur, in a later policy period.

4.     The coverage provided under this Limited Coverage is a sub-limit and does not increase the applicable Limit of Insurance on any Covered Property.  If a particular "occurrence" results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

    If there is covered loss or damage to Covered Property, not caused by "fungus", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus", wet or dry rot or bacteria causes an increase in the loss.  Any such increase in the loss will be subject to the terms of this Limited Coverage.

5.     The terms of this Limited Coverage do not increase or reduce the coverage provided under paragraph **F.2.** (Water Damage, Other Liquids, Powder Or Molten Material Damage) of this Causes of Loss form or under the Additional Coverage – Collapse.

6.     The following **6.a.** or **6.b.** applies only if Business Income and/or Extra Expense coverage applies to the described premises and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable Business Income and/or Extra Expense Coverage form.

    a.     If the loss which resulted in "fungus" wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to loss or damage to property caused by "fungus", wet or dry rot or bacteria, then our payment under Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days.  The days need not be consecutive.

    b.     If a covered "suspension" of "operations" was caused by loss or damage other than "fungus", wet or dry rot or bacteria but remediation of "fungus", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days.  The days need not be consecutive.

**D.**     The following item is added to **DEFINITIONS**:

"Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**E.**   Item **d.2.** under section **2.** of the **EXCLUSIONS** is amended to read:

"Rust, corrosion, decay, deterioration, hidden or latent defect or quality in property that causes it to damage or destroy itself".

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 5

Policy Number: ESP 7303712-00

Named Insured: MMI 82 LLC, CASA MORADA

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: March 15, 2017

00 EXP0003 00 08 14

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**ELECTRONIC DATA LOSS OR DAMAGE – EXCLUSION**

This endorsement modifies insurance provided under this policy.

**A.**   It is agreed that the following definitions apply:

"Electronic Data" means facts, concepts and information converted to a form useable for communications, interpretation or processing by electronic and electromechanical data processing or electronically controlled equipment and includes programs, software and other coded instructions for the processing and manipulation of data or the direction and manipulation of such equipment.

"Computer Virus" means a set of corrupting, harmful or otherwise unauthorized instructions or code including a set of maliciously introduced unauthorized instructions or code, programmatic or otherwise, that propagate themselves through a computer system or network of whatsoever nature".  "Computer Virus" includes but is not limited to 'trojan horses', 'worms' and 'time or logic bombs'.

**B.**   Except as provided in the Additional Coverage – Electronic Data, if any, the following exclusion applies:

**Damage to Electronic Data**

We will not pay for loss, destruction, distortion, erasure, corruption, deletion, manipulation or alteration of or damage to "Electronic Data" including loss of use, reduction in functionality, or any cost or expense to replace or restore such "Electronic Data" from any cause whatsoever (including, but not limited to, "Computer Virus" or a willful or malicious act).

This exclusion applies regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

However, this exclusion does not apply to loss, destruction, distortion, erasure, corruption, deletion, manipulation or alteration of or damage to "Electronic Data" arising from the following specified causes of loss, if these causes of loss are not otherwise excluded: fire, lightning, explosion, windstorm or hail, strike, riot or civil commotion, leakage from fire extinguishing equipment, impact or collapse.  However, this exception does not apply to fire or explosion resulting from risks excluded under any terrorism exclusion.

**C.**   Except as provided in the Additional Coverage – Interruption Of Computer Operations, if any, the following is added to the Business Income and/or Extra Expense Coverage, as applicable:

**Additional Limitation – Interruption Of Computer Operations**

We will not pay for:

**1.**   Business Income loss incurred when a "suspension" of "operations" is caused by loss, destruction, distortion, erasure, corruption, deletion, manipulation or alteration of or damage to "Electronic Data" from any cause whatsoever (including, but not limited to, "Computer Virus" or a willful or malicious act).

**2.**   Extra Expense loss incurred when action is taken to avoid or minimize a "suspension" of "operations" caused by loss, destruction, distortion, erasure, corruption, deletion, manipulation or alteration of or damage to "Electronic Data" from any cause whatsoever (including, but not limited to, "Computer Virus" or a willful or malicious act).

This limitation applies regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

However, this limitation will not apply to loss, destruction, distortion, erasure, corruption, deletion, manipulation or alteration of or damage to "Electronic Data" arising from the following specified causes of loss, if these causes of loss are not otherwise excluded: fire, lightning, explosion, windstorm or hail, strike, riot or civil commotion, leakage from fire extinguishing equipment, impact or collapse.   However, this exception does not apply to fire or explosion resulting from risks excluded under any terrorism exclusion.

All other terms and conditions of this policy remain unchanged.

Endorsement Number: 6

Policy Number: ESP 7303712-00

Named Insured: MMI 82 LLC, CASA MORADA

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: March 15, 2017

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**ASBESTOS MATERIAL REMOVAL LIMITATION**

This endorsement modifies insurance provided under this policy.

It is agreed that:

**ASBESTOS MATERIAL REMOVAL LIMITATION**

This policy excludes any loss, damage or expense to remove or replace asbestos materials unless such materials are themselves damaged by a Covered Cause of Loss.

Notwithstanding that competent Government Authority may declare all or parts of the insured premises unfit for occupancy without removal or modifications to asbestos materials, our liability is limited to the proportion represented by the cost to repair the damaged part of the premises, not the entire property.

Similarly, if the policy provides any coverage for business income, extra expense, loss of rents or rental value or other loss of use or occupancy, such coverage shall be limited to the time necessary to repair or replace only the damaged portion(s) of the premises.

Nothing in this Endorsement shall override any radioactive contamination exclusion clause in the Policy to which this Endorsement is attached.

All other terms and conditions of this policy remain unchanged.

Endorsement Number: 7

Policy Number: ESP 7303712-00

Named Insured: MMI 82 LLC, CASA MORADA

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: March 15, 2017

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## AUTHORITIES EXCLUSION

This endorsement modifies insurance provided under this policy.

It is agreed that:

**AUTHORITIES EXCLUSION**

This policy does not insure against loss, damage, costs, expenses, fines or penalties incurred or sustained by or imposed on the insured at the order of any government agency, court or other authority arising from any cause whatsoever.

All other terms and conditions of this policy remain unchanged.

Endorsement Number: 8

Policy Number: ESP 7303712-00

Named Insured: MMI 82 LLC, CASA MORADA

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: March 15, 2017

00 EXP0190 00 02 15                                                                                         Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA**

This endorsement modifies insurance provided under this policy.

It is agreed that:

**EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA**

1.  The exclusion set forth in Paragraph **2.** applies to all coverages under all forms and endorsements that comprise this policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

2.  We will not pay for loss or damage caused by or resulting from any virus, bacterium or other micro-organism that induces or is capable of inducing physical distress, illness or disease. However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this policy.

3.  With respect to any loss or damage subject to the exclusion in Paragraph **2.**, such exclusion supersedes any exclusion relating to "pollutants".

4.  The following provisions in this policy are hereby amended to remove reference to bacteria:

    **(a)**  EXCLUSION – "Fungus", Wet Rot, Dry Rot And Bacteria;

    **(b)**  ADDITIONAL COVERAGE – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

The terms of the exclusion in Paragraph **2.**, or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this policy.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 9

Policy Number: ESP 7303712-00

Named Insured: MMI 82 LLC, CASA MORADA

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: March 15, 2017

## Commercial Property Coverage Part Declarations

| | |
|---|---|
| **Policy Number** | ESP 7303712-00 |
| **Renewal of** | New |
| **Named Insured** | MMI 82 LLC, CASA MORADA |
| **Effective Date** | March 15, 2017 |

| **Description of Premises** | |
|---|---|
| **Premises Number** | All |
| **Building Number** | All |
| **Location, Construction, and Occupancy** | 136 Madeira Road, Islamorada, FL 33036; Fire Resistive; Hotel |

**Coverage Provided – Insurance at the described premises applies only for coverages for which a limit of Insurance is shown**

| | |
|---|---|
| **Premises Number** | All |
| **Building Number** | All |
| **Coverage** | Real Property: $2,200,000<br>Business Personal Property: $663,084<br>Outdoor Property: 100,000<br>Business Income including Extra Expense:  $942,000 |
| **Limit of Insurance** | $3,905,084 Specific/Scheduled |
| **Coverage Cause of Loss** | Special |
| **Coinsurance (If extra expense coverage, limits on loss payment)** | NIL |

**Optional Coverages – applicable only when entries are made in the schedule below**

| | |
|---|---|
| **Premises Number** | All |
| **Building Number** | All |
| **Agreed Value** | Expiration Date:<br>Coverage:<br>Amount: |
| **Replacement Cost** | ☒ Yes<br>☐ No<br>Real Property, Business Personal Property |
| **Actual Cash Value** | ☐ Yes<br>☐ No |

| Functional Replacement Cost | ☐ Yes<br>☐ No |
|---|---|
| Indemnity – Applies to Business Income Only | Monthly Limit:<br>Maximum Period:<br>Extended Period: |

| | **Mortgage Holder 1** |
|---|---|
| Premises Number | All |
| Building Number | All |
| Name | Natixis Real Estate Capital, LLC<br>ISAOA ATIMA<br>Loss Payee |
| Mailing Address | |

| | **Coverage** |
|---|---|
| Deductible | $10,000.00 Per Occurrence<br>Except as per Named Windstorm Percentage Deductible Endorsement (Reported Value)<br>$50,000 All Other Windstorm and Hail |
| Total Premium | Included |

| | **Form(s)/Endorsement(s)** |
|---|---|
| Applicable To All Coverages | See Schedule of Forms and Endorsements Form 00 ML0012 00 01 03 |

*These Declarations, when combined with the common policy declarations, the common policy conditions, coverage form(s) and endorsements, if any, issued to form a part thereof, complete the contract of insurance.*

# BUILDING AND PERSONAL
# PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H. Definitions.**

**A.    Coverage**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

**1.    Covered Property**

Covered Property, as used in this Coverage Part, means the type of property described in this Section, **A.1.,** and limited in **A.2.,** Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

**a.    Building**, meaning the building or structure described in the Declarations, including:

**(1)**    Completed additions;

**(2)**    Fixtures, including outdoor fixtures;

**(3)**    Permanently installed:

**(a)**    Machinery and

**(b)**    Equipment;

**(4)**    Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

**(a)**    Fire extinguishing equipment;

**(b)**    Outdoor furniture;

**(c)**    Floor coverings; and

**(d)**    Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

**(5)**    If not covered by other insurance:

**(a)**    Additions under construction, alterations and repairs to the building or structure;

**(b)**    Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

    **b.**   **Your Business Personal Property** located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises, consisting of the following unless otherwise specified in the Declarations or on the Your Business Personal Property – Separation of Coverage form:

       **(1)**   Furniture and fixtures;

       **(2)**   Machinery and equipment;

       **(3)**   "Stock";

       **(4)**   All other personal property owned by you and used in your business;

       **(5)**   Labor, materials or services furnished or arranged by you on personal property of others;

       **(6)**   Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

          **(a)**   Made a part of the building or structure you occupy but do not own; and

          **(b)**   You acquired or made at your expense but cannot legally remove;

       **(7)**   Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property of Others.

    **c.**   **Personal Property Of Others** that is:

       **(1)**   In your care, custody or control; and

       **(2)**   Located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

      However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**2.**   **Property Not Covered**

    Covered Property does not include:

    **a.**   Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

    **b.**   Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

    **c.**   Automobiles held for sale;

    **d.**   Bridges, roadways, walks, patios or other paved surfaces;

    **e.**   Contraband, or property in the course of illegal transportation or trade;

    **f.**   The cost of excavations, grading, backfilling or filling;

    **g.**   Foundations of buildings, structures, machinery or boilers if their foundations are below:

       **(1)**    The lowest basement floor; or

       **(2)**    The surface of the ground, if there is no basement;

**h.**    Land (including land on which the property is located), water, growing crops or lawns;

**i.**    Personal property while airborne or waterborne;

**j.**    Bulkheads, pilings, piers, wharves or docks;

**k.**    Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

**l.**    Retaining walls that are not part of a building;

**m.**    Underground pipes, flues or drains;

**n.**    Electronic data, except as provided under Additional Coverages – Electronic Data. Electronic data means facts, concepts and information converted to a form useable for communications, interpretation or processing by electronic or electromechanical data processing or electronically controlled equipment and includes programs, software, and other coded instructions for the processing and manipulation of data or the direction and manipulation of such equipment. This Paragraph **n.**, does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

**o.**    The cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems. Refer to the Coverage Extension for Valuable Papers And Records (Other Than Electronic Data) for limited coverage for valuable papers and records other than those which exist as electronic data.

**p.**    Vehicles or self-propelled machines (including aircraft or watercraft) that:

       **(1)**    Are licensed for use on public roads; or

       **(2)**    Are operated principally away from the described premises.

    This paragraph does not apply to:

       **(a)**    Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

       **(b)**    Vehicles or self-propelled machines, other than autos, you hold for sale;

       **(c)**    Rowboats or canoes out of water at the described premises; or

       **(d)**    Trailers, but only to the extent provided for in the Coverage Extension for Non-Owned Detached Trailers.

**q.**    The following property while outside of buildings:

       **(1)**    Grain, hay, straw or other crops;

        **(2)**    Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs or plants (other than "stock" of trees, shrubs or plants), all except as provided in the Coverage Extensions.

**3.**    **Covered Causes Of Loss**

    See applicable Causes of Loss Form as shown in the Declarations.

**4.**    **Additional Coverages**

**a.**    **Debris Removal**

    **(1)**    Subject to Paragraphs **(2)**, **(3)** and **(4)**, we will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

    **(2)**    Debris Removal does not apply to costs to:

        **(a)**    Extract "pollutants" from land or water; or

        **(b)**    Remove, restore or replace polluted land or water.

    **(3)**    Subject to the exceptions in Paragraph **(4)**, the following provisions apply:

        **(a)**    The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

        **(b)**    Subject to **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

    **(4)**    We will pay up to an additional $10,000 for debris removal expense, for each location, in any one "occurrence" of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

        **(a)**    The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

        **(b)**    The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

        Therefore, if **(4)(a)** and/or **(4)(b)** apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $10,000.

    **(5)**    **Examples**

        The following examples assume that there is no coinsurance penalty.

**Example #1**

| | |
|---|---|
| Limit of Insurance | $90,000 |
| Amount of Deductible | $500 |
| Amount of Loss | $50,000 |
| Amount of Loss Payable | $49,500 |
| | ($50,000 - $500) |
| Debris Removal Expense | $10,000 |
| Debris Removal Expense Payable | $10,000 |

($10,000 is 20% of $50,000)

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3)**.

**Example #2**

| | |
|---|---|
| Limit of Insurance | $90,000 |
| Amount of Deductible | $500 |
| Amount of Loss | $80,000 |
| Amount of Loss Payable | $79,500 |
| | ($80,000 - $500) |
| Debris Removal Expense | $30,000 |
| Debris Removal Expense Payable | |
| Basic Amount | $10,500 |
| Additional Amount | $10,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000; capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($30,000) exceeds 25% of the loss payable plus the deductible ($30,000 is 37.5% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $30,000 = $109,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $10,000, the maximum payable under Paragraph **(4)**. Thus the total payable for debris removal expense in this example is $20,500; $9,500 of the debris removal expense is not covered.

**b.    Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

    **(1)**    While it is being moved or while temporarily stored at another location; and

    **(2)**    Only if the loss or damage occurs within 30 days after the property is first moved.

**c.**    **Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department service charges:

    **(1)**    Assumed by contract or agreement prior to loss; or

    **(2)**    Required by local ordinance.

No Deductible applies to this Additional Coverage.

**d.**    **Pollutant Clean Up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12 month period of this policy.

**e.**    **Increased Cost Of Construction**

    **(1)**    This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

    **(2)**    In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum enforcement standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **e.(3)** through **e.(9)** of this Additional Coverage.

    **(3)**    The ordinance or law referred to in **e.(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises, and is in force at the time of loss.

    **(4)**    Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

        **(a)**    You were required to comply with before the loss, even when the

building was undamaged; and

**(b)** You failed to comply with.

**(5)** Under this Additional Coverage, we will not pay for:

**(a)** The enforcement of or compliance with any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

**(b)** Any costs associated with the enforcement of or compliance with an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

**(6)** The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of: $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable coinsurance percentage.

**(7)** With respect to this Additional Coverage:

**(a)** We will not pay for the Increased Cost of Construction:

**(i)** Until the property is actually repaired or replaced, at the same or another premises; and

**(ii)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

**(b)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the same premises.

**(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion, to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

**(9)** The costs addressed in the Loss Payment and Valuation Conditions, and the Replacement Cost Optional Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of an ordinance or law. The

amount payable under this Additional Coverage, as stated in **e.(6)** of this Additional Coverage, is not subject to such limitation.

**f.    Electronic Data**

**(1)**    Under this Additional Coverage, electronic data has the meaning described under Property Not Covered – Electronic Data.  This Additional Coverage does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

**(2)**    Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss.  To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

**(3)**    The Covered Causes of Loss applicable to Your Business Personal Property apply to this Additional Coverage – Electronic Data, subject to the following:

**(a)**    If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage – Electronic Data is limited to the "specified causes of loss" as defined in that form, and Collapse as set forth in that form.

**(b)**    If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage – Electronic Data includes Collapse as set forth in that form.

**(c)**    If the Causes Of Loss Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage – Electronic Data.

**(d)**    Regardless of the Causes of Loss Form applicable, we will not pay for loss or damage caused by or resulting from a virus, harmful code or similar instruction, whether from an internal or external source, introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. There also is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

**(4)**    The most we will pay under this Additional Coverage – Electronic Data is $2,500 for all loss or damage sustained in any one policy year, regardless of the number of "occurrences" of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first "occurrence" does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an "occurrence" which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the "occurrence" began.

5.   **Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

Each of the following Coverage Extensions is additional insurance. The Additional Condition, Coinsurance, does not apply to these Extensions.

If a Coinsurance percentage of 80% or more, or a Value Reporting period symbol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

a.   **Newly Acquired Or Constructed Property**

(1)   **Buildings**

If this policy covers Building, you may extend that insurance to apply to:

(a)   Your new buildings while being built on the described premises; and

(b)   Buildings you acquire at locations, other than the described premises, intended for:

(i)   Similar use as the building described in the Declarations; or

(ii)   Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

(2)   **Your Business Personal Property**

(a)   If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

(i)   Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions;

(ii)   Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations; or

(iii)   Business personal property that you newly acquire, located at the described premises.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

(b)   This Extension does not apply to:

(i)   Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

(ii)   Personal property of others that is temporarily in your possession

in the course of your manufacturing or wholesaling activities.

**(3)   Period Of Coverage**

With respect to insurance provided under this Coverage Extension for Newly Acquired Or Constructed Property, coverage will end when any of the following first occurs:

**(a)**   This policy expires;

**(b)**   30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

**(c)**   You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

**b.   Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

**(1)**   Personal effects owned by you, your officers, your partners or members, your managers or your employees.   This extension does not apply to loss or damage by theft.

**(2)**   Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c.   Valuable Papers And Records (Other Than Electronic Data)**

**(1)**   You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist.   But this Extension does not apply to valuable papers and records which exist as electronic data.   Electronic data has the meaning described under Property Not Covered – Electronic Data.

**(2)**   If the Causes Of Loss – Special Form applies, coverage under this Extension is limited to the "specified causes of loss" as defined in that form, and Collapse as set forth in that form.

**(3)**   If the Causes Of Loss – Broad Form applies, coverage under this Extension includes Collapse as set forth in that form.

**(4)**   Under this Extension, the most we will pay to replace or restore the lost information is $2,500 at each described premises, unless a higher limit is shown in the Declarations.   Such amount is additional insurance.   We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist), and (when there is a duplicate) for the cost of labor to transcribe or copy the records.   The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal

Property and therefore coverage of such costs is not additional insurance.

**d.    Property Off-Premises**

**(1)**   You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

**(a)**   Temporarily at a location you do not own, lease or operate;

**(b)**   In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

**(c)**   At any fair, trade show or exhibition.

**(2)**   This Extension does not apply to property:

**(a)**   In or on a vehicle; or

**(b)**   In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

**(3)**   The most we will pay for loss or damage under this Extension is $10,000.

**e.    Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), signs (other than signs attached to buildings), trees, shrubs and plants (other than "stock" of trees, shrubs or plants), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

**(1)**   Fire;

**(2)**   Lightning;

**(3)**   Explosion;

**(4)**   Riot or Civil Commotion; or

**(5)**   Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant.  These limits apply to any one "occurrence", regardless of the types or number of items lost or damaged in that "occurrence".

**f.    Non-Owned Detached Trailers**

**(1)**   You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

**(a)**   The trailer is used in your business;

**(b)**   The trailer is in your care, custody or control at the premises described in the Declarations; and

    **(c)**    You have a contractual responsibility to pay for loss or damage to the trailer.

  **(2)**    We will not pay for any loss or damage that occurs:

    **(a)**    While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

    **(b)**    During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

  **(3)**    The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

  **(4)**    This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

**B.**    **Exclusions And Limitations**

See applicable Causes of Loss Form as shown in the Declarations.

**C.**    **Limits Of Insurance**

The most we will pay for loss or damage in any one "occurrence" is the applicable Limit of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs attached to buildings is $1,000 per sign in any one "occurrence".

The limits applicable to the following Additional Coverages apply in accordance with the terms of such coverage and are in addition to the Limits of Insurance shown in the Declarations for any other coverage:

**1.**  Fire Department Service Charge;

**2.**  Pollutant Clean Up and Removal;

**3.**  Increased Cost of Construction; and

**4.**  Electronic Data.

Payments under the Preservation of Property Additional Coverage will not increase the applicable Limit of Insurance.

**D.**    **Deductible**

In any one "occurrence" of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss, and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the "occurrence" involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the

Deductible. But the Deductible will be applied only once per "occurrence".

**Example No. 1:**

(This example assumes there is no coinsurance penalty.)

| | |
|---|---|
| Deductible: | $250 |
| Limit of Insurance – Bldg. 1: | $60,000 |
| Limit of Insurance – Bldg. 2: | $80,000 |
| Loss to Bldg. 1: | $60,100 |
| Loss to Bldg. 2: | $90,000 |

The amount of loss to Bldg. 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Bldg. 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Bldg. 1:

$   60,100

–       250

$   59,850   Loss Payable – Bldg. 1

The Deductible applies once per "occurrence" and therefore is not subtracted in determining the amount of loss payable for Bldg. 2. Loss payable for Bldg. 2 is the Limit of Insurance of $80,000.

Total amount of loss payable: $59,850 + 80,000 = $139, 850

**Example No. 2:**

(This example, too, assumes there is no coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example No. 1.

| | |
|---|---|
| Loss to Bldg. 1: | $70,000 |
| (exceeds Limit of Insurance plus Deductible) | |
| Loss to Bldg. 2: | $90,000 |
| (exceeds Limit of Insurance plus Deductible) | |
| Loss Payable – Bldg. 1: | $60,000 |
| (Limit of Insurance) | |
| Loss Payable – Bldg. 2: | $80,000 |
| (Limit of Insurance) | |
| Total amount of loss payable: | $140,000 |

**E.     Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**1.     Abandonment**

There can be no abandonment of any property to us.

2.     **Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a.     Pay its chosen appraiser; and

b.     Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

3.     **Duties In The Event Of Loss Or Damage**

a.     You must see that the following are done in the event of loss or damage to Covered Property:

(1)    Notify the police if a law may have been broken.

(2)    Give us prompt notice of the loss or damage. Include a description of the property involved.

(3)    As soon as possible, give us a description of how, when and where the loss or damage occurred.

(4)    Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

(5)    At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

(6)    As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(7)    Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8)    Cooperate with us in the investigation or settlement of the claim.

b.     We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event

of an examination, an insured's answers must be signed.

**4.** **Loss Payment**

**a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:

    **(1)** Pay the value of lost or damaged property;

    **(2)** Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

    **(3)** Take all or any part of the property at an agreed or appraised value; or

    **(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

**b.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**c.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**d.** We will not pay you more than your financial interest in the Covered Property.

**e.** We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and:

    **(1)** We have reached agreement with you on the amount of loss; or

    **(2)** An appraisal award has been made.

**h.** A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance, the Valuation and Coinsurance Conditions and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the

adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

**5.    Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6.    Vacancy**

**a.    Description Of Terms**

**(1)**    As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

**(a)**    When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(b)**    When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**(i)**    Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

**(ii)**    Used by the building owner to conduct customary operations.

**(2)**    Buildings under construction or renovation are not considered vacant.

**b.    Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**(1)**    We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

**(a)**    Vandalism;

**(b)**    Sprinkler leakage, unless you have protected the system against freezing;

**(c)**    Building glass breakage;

**(d)**    Water damage;

**(e)**    Theft; or

**(f)**    Attempted theft.

**(2)**    With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for

the loss or damage by 15%.

**7.    Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

**a.**    At actual cash value as of the time of loss or damage, except as provided in **b., c., d.** and **e.** below.

**b.**    If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property. However, the following property will be valued at the actual cash value even when attached to the building:

**(1)**    Awnings or floor coverings;

**(2)**    Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

**(3)**    Outdoor equipment or furniture.

**c.**    "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

**d.**    Glass at the cost of replacement with safety glazing material if required by law.

**e.**    Tenant's Improvements and Betterments at:

**(1)**    Actual cash value of the lost or damaged property if you make repairs promptly.

**(2)**    A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

**(a)**    Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

**(b)**    Divide the amount determined in **(a)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(3)**    Nothing if others pay for repairs or replacement.

**F.    Additional Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**1.    Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies.

   **a.**   We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

   **(1)**   Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

   **(2)**   Divide the Limit of Insurance of the property by the figure determined in Step **(1)**;

   **(3)**   Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step **(2)**; and

   **(4)**   Subtract the deductible from the figure determined in Step **(3)**.

We will pay the amount determined in Step **(4)** or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

### Example No. 1 (Underinsurance):

When:
| | |
|---|---|
| The value of the property is | $250,000 |
| The Coinsurance percentage for it is | 80% |
| The Limit of Insurance for it is | $100,000 |
| The Deductible is | $250 |
| The amount of loss is | $40,000 |

Step **(1)**: $250,000 x 80% = $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

Step **(2)**: $100,000 ÷ $200,000 = .50

Step **(3)**: $40,000 x .50 = $20,000

Step **(4)**: $20,000 – $250 = $19,750

We will pay no more than $19,750. The remaining $20,250 is not covered.

### Example No. 2 (Adequate Insurance):

When:
| | |
|---|---|
| The value of the property is | $250,000 |
| The Coinsurance percentage for it is | 80% |
| The Limit of Insurance for it is | $200,000 |
| The Deductible is | $250 |
| The amount of loss is | $40,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this Example is adequate and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

   **b.**   If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

### Example No. 3:

| When: | The value of property is: | |
|---|---|---|
| | Bldg. at Location No. 1 | $75,000 |
| | Bldg. at Location No. 2 | $100,000 |
| | Personal Property at Location No. 2 | $75,000 |
| | | $250,000 |
| | The Coinsurance percentage for it is | 90% |
| | The Limit of Insurance for Buildings and Personal Property at Location Nos. 1 and 2 is | $180,000 |
| | The Deductible is | $1,000 |
| | The amount of loss is: | |
| | Bldg. at Location No. 2 | $30,000 |
| | Personal Property at Location No. 2. | $20,000 |
| | | $50,000 |

Step **(1)**: $250,000 x 90% = $225,000

(the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step **(2)**: $180,000 ÷ $225,000 = .80

Step **(3)**: $50,000 x .80 = $40,000

Step **(4)**: $40,000 − $1,000 = $39,000

We will pay no more than $39,000. The remaining $11,000 is not covered.

**2.    Mortgageholders**

a.    The term mortgageholder includes trustee.

b.    We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

c.    The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

d.    If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

(1)    Pays any premium due under this Coverage Part at our request if you have failed to do so;

(2)    Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

(3)    Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

e.    If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

     **(1)**   The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

     **(2)**   The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.**   If we cancel this policy, we will give written notice to the mortgageholder at least:

     **(1)**   10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

     **(2)**   30 days before the effective date of cancellation if we cancel for any other reason.

**g.**   If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**G.**   **Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

**1.**   **Agreed Value**

**a.**   The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

**b.**   If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

**c.**   The terms of this Optional Coverage apply only to loss or damage that occurs:

     **(1)**   On or after the effective date of this Optional Coverage; and

     **(2)**   Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

**2.**   **Inflation Guard**

**a.**   The Limit of Insurance for property to which this Optional Coverage applied will automatically increase by the annual percentage shown in the Declarations.

**b.**   The amount of increase will be:

     **(1)**   The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

     **(2)**   The percentage of annual increase shown in the Declarations, expressed as a

decimal (example: 8% is .08), times

    **(3)**    The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

**Example:**

| If: | The applicable Limit of Insurance is | $100,000 |
|---|---|---|
| | The annual percentage increase is | 8% |
| | The number of days since the beginning of the policy year (or last policy change) is | 146 |
| | The amount of increase is $100,000 x .08 x 146 | |
| | ÷ 365 = | $3,200 |

**3.**    **Replacement Cost**

    **a.**    Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Loss Condition, Valuation, of this Coverage Form.

    **b.**    This Optional Coverage does not apply to:

        **(1)**    Personal property of others;

        **(2)**    Contents of a residence;

        **(3)**    Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or

        **(4)**    "Stock", unless the Including "Stock" option is shown in the Declarations.

        Under the terms of this Replacement Cost Optional Coverage, tenants' improvements and betterments are not considered to be the personal property of others.

    **c.**    You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

    **d.**    We will not pay on a replacement cost basis for any loss or damage:

        **(1)**    Until the lost or damaged property is actually repaired or replaced; and

        **(2)**    Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

        With respect to tenants' improvements and betterments, the following also apply:

        **(3)**    If the conditions in **d.(1)** and **d.(2)** above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth in the Valuation Condition of this Coverage Form; and

    **(4)**    We will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.

**e.**    We will not pay more for loss or damage on a replacement cost basis than the least of **(1)**, **(2)** or **(3)**, subject to **f.** below:

    **(1)**    The Limit of Insurance applicable to the lost or damaged property;

    **(2)**    The cost to replace the lost or damaged property with other property:

        **(a)**    Of comparable material and quality; and

        **(b)**    Used for the same purpose; or

    **(3)**    The amount actually spent that is necessary to repair or replace the lost or damaged property.

    If a building is rebuilt at a new premises, the cost described in **e.(2)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

**f.**    The cost of repair or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

**4.**    **Extension Of Replacement Cost To Personal Property Of Others**

**a.**    If the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Extension may also be shown as applicable. If the Declarations show this Extension as applicable, then Paragraph **3.b.(1)** of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

**b.**    With respect to replacement cost on the personal property of others, the following limitation applies:

    If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

**H.**    **Definitions**

**1.**    **"Fungus"** means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.**    **"Pollutants"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**3.**    **"Stock"** means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

# BUSINESS INCOME (AND EXTRA EXPENSE)
## COVERAGE FORM

Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F. Definitions.**

**A.     Coverage**

    **1.     Business Income**

        Business Income means the:

        **a.**     Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

        **b.**     Continuing normal operating expenses incurred, including payroll.

        For manufacturing risks, Net Income includes the net sales value of production.

    Coverage is provided as described and limited below for one or more of the following options for which a Limit Of Insurance is shown in the Declarations:

        **(1)**     Business Income including "Rental Value".

        **(2)**     Business Income other than "Rental Value".

        **(3)**     "Rental Value".

    If option **(1)** above is selected, the term Business Income will include "Rental Value".  If option **(3)** above is selected, the term Business Income will mean "Rental Value" only.

    If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

    We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration".  The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.  With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

    With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises means:

        **a.**     The portion of the building which you rent, lease or occupy;

        **b.**     The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to

personal property in the open or personal property in a vehicle).

   **c.**   Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

**2.**   **Extra Expense**

   **a.**   Extra Expense coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income coverage applies at that premises.

   **b.**   Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

We will pay Extra Expense (other than the expense to repair or replace property) to:

   **(1)**   Avoid or minimize the "suspension" of business and to continue "operations" at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.

   **(2)**   Minimize the "suspension" of business if you cannot continue "operations".

We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

**3.**   **Covered Causes Of Loss, Exclusions And Limitations**

See applicable Causes of Loss form as shown in the Declarations.

**4.**   **Additional Limitation – Interruption Of Computer Operations**

   **a.**   Coverage for Business Income does not apply when a "suspension" of "operations" is caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage – Interruption Of Computer Operations.

   **b.**   Coverage for Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage – Interruption Of Computer Operations.

   **c.**   Electronic data means facts, concepts and information converted to a form useable for communications, interpretation or processing by electronic or electromechanical data processing or electronically controlled equipment and includes programs, software, and other coded instructions for the processing and manipulation of data or the direction and manipulation of such equipment.

**5.**   **Additional Coverages**

   **a.**   **Civil Authority**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described

premises provided that both of the following apply:

(1)    Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

(2)    The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

The coverage for Business Income will begin 72 hours after the time of that action and will apply for a period of up to three consecutive weeks after coverage begins.

The coverage for Extra Expense will begin immediately after the time of that action and will end:

(1)    3 consecutive weeks after the time of that action; or

(2)    When your Business Income coverage ends;

whichever is later.

**b.**    **Alterations And New Buildings**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur due to direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss to:

(1)    New buildings or structures, whether complete or under construction;

(2)    Alterations or additions to existing buildings or structures; and

(3)    Machinery, equipment, supplies or building materials located on or within 100 feet of the described premises and:

    (a)    Used in the construction, alterations or additions; or

    (b)    Incidental to the occupancy of new buildings.

If such direct physical loss or damage delays the start of "operations", the "period of restoration" for Business Income Coverage will begin on the date "operations" would have begun if the direct physical loss or damage had not occurred.

**c.**    **Extended Business Income**

    **(1)**    **Business Income Other Than "Rental Value"**

        If the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

        (a)    Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

**(b)** Ends on the earlier of:

    **(i)** The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or

    **(ii)** 30 consecutive days after the date determined in **(1)(a)** above.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**(2)** **"Rental Value"**

If the necessary "suspension" of your "operations" produces a "Rental Value" loss payable under this policy, we will pay for the actual loss of "Rental Value" you incur during the period that:

**(a)** Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

**(b)** Ends on the earlier of:

    **(i)** The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct physical loss or damage had occurred; or

    **(ii)** 30 consecutive days after the date determined in **(2)(a)** above.

However, Extended Business Income does not apply to loss of "Rental Value" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of "Rental Value" must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**d.** **Interruption Of Computer Operations**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Additional Limitation – Interruption Of Computer Operations.

**(2)** Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of electronic data due to a Covered Cause of Loss.

**(3)** With respect to the coverage provided under this Additional Coverage, the

Covered Causes of Loss are subject to the following:

(a) If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage – Interruption Of Computer Operations is limited to the "specified causes of loss" as defined in that form, and Collapse as set forth in that form.

(b) If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage – Interruption Of Computer Operations includes Collapse as set forth in that form.

(c) If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage – Interruption Of Computer Operations.

(d) Regardless of the Causes Of Loss Form applicable, we will not pay for loss or damage caused by or resulting from a virus, harmful code or similar instruction, whether from an internal or external source, introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. There also is no coverage for an interruption related to manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, maintain, repair or replace that system.

(4) The most we will pay under this Additional Coverage – Interruption Of Computer Operations is $2,500 for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

(5) This Additional Coverage – Interruption Of Computer Operations does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in (4) above has not been exhausted.

**6.   Coverage Extension**

This Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

If a Coinsurance percentage of 50% or more is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

NEWLY ACQUIRED LOCATIONS

a.   You may extend your Business Income and Extra Expense Coverages to apply to

property at any location you acquire other than fairs or exhibitions.

 **b.** The most we will pay under this Extension, for the sum of Business Income loss and Extra Expense incurred, is $100,000 at each location.

 **c.** Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

  **(1)** This policy expires;

  **(2)** 30 days expire after you acquire or begin to construct the property; or

  **(3)** You report values to us.

  We will charge you additional premium for values reported from the date you acquire the property.

## B. Limits Of Insurance

The most we will pay for loss in any one "occurrence" is the applicable Limit of Insurance shown in the Declarations.

The limit applicable to the Coverage Extension is in addition to the Limit of Insurance.

Payments under the following coverages will not increase the applicable Limit of Insurance:

**1.** Alterations and New Buildings;

**2.** Civil Authority;

**3.** Extra Expense; or

**4.** Extended Business Income.

## C. Loss Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1.** **Appraisal**

 If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.

 The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

 **a.** Pay its chosen appraiser; and

 **b.** Bear the other expenses of the appraisal and umpire equally.

 If there is an appraisal, we will still retain our right to deny the claim.

**2.     Duties In The Event Of Loss**

    **a.**    You must see that the following are done in the event of loss:

        **(1)**    Notify the police if a law may have been broken.

        **(2)**    Give us prompt notice of the direct physical loss or damage. Include a description of the property involved.

        **(3)**    As soon as possible, give us a description of how, when, and where the direct physical loss or damage occurred.

        **(4)**    Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

        **(5)**    As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

                Also permit us to take samples of damaged and undamaged property for inspection, testing, and analysis, and permit us to make copies from your books and records.

        **(6)**    Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

        **(7)**    Cooperate with us in the investigation or settlement of the claim.

        **(8)**    If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

    **b.**    We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**3.     Loss Determination**

    **a.**    The amount of Business Income loss will be determined based on:

        **(1)**    The Net Income of the business before the direct physical loss or damage occurred;

        **(2)**    The likely Net Income of the business if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

        **(3)**    The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct

physical loss or damage; and

    **(4)**   Other relevant sources of information, including:

        **(a)**   Your financial records and accounting procedures;

        **(b)**   Bills, invoices and other vouchers; and

        **(c)**   Deeds, liens or contracts.

**b.**   The amount of Extra Expense will be determined based on:

    **(1)**   All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

        **(a)**   The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

        **(b)**   Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

    **(2)**   Necessary expenses that reduce the Business Income loss that otherwise would have been incurred.

**c.**   **Resumption Of Operations**

We will reduce the amount of your:

    **(1)**   Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

    **(2)**   Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

**d.**   If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**4.**   **Loss Payment**

We will pay for covered loss within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and:

**a.**   We have reached agreement with you on the amount of loss; or

**b.**   An appraisal award has been made.

**D.**   **Additional Condition**

    **Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies in addition to the Common Policy Conditions and the Commercial Property Conditions.

We will not pay the full amount of any Business Income loss if the Limit of Insurance for Business Income is less than:

**a.**     The Coinsurance percentage shown for Business Income in the Declarations; times

**b.**     The sum of:

   **(1)**     The Net Income (Net Profit or Loss before income taxes), and

   **(2)**     Operating expenses, including payroll expenses,

   that would have been earned or incurred (had no loss occurred) by your "operations" at the described premises for the 12 months following the inception, or last previous anniversary date, of this policy (whichever is later).

Instead, we will determine the most we will pay using the following steps:

**1.**     Multiply the Net Income and operating expense for the 12 months following the inception, or last previous anniversary date, of this policy by the Coinsurance percentage;

**2.**     Divide the Limit of Insurance for the described premises by the figure determined in Step **1.**; and

**3.**     Multiply the total amount of loss by the figure determined in Step **2.**

We will pay the amount determined in Step **3.** or the limit of insurance, whichever is less.  For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

In determining operating expenses for the purpose of applying the Coinsurance condition, the following expenses, if applicable, shall be deducted from the total of all operating expenses:

**1.**     Prepaid freight – outgoing;

**2.**     Returns and allowances;

**3.**     Discounts;

**4.**     Bad debts;

**5.**     Collection expenses;

**6.**     Cost of raw stock and factory supplies consumed (including transportation charges);

**7.**     Cost of merchandise sold (including transportation charges);

**8.**     Cost of other supplies consumed (including transportation charges);

**9.**     Cost of services purchased from outsiders (not employees) to resell, that do not continue under contract;

**10.**     Power, heat and refrigeration expenses that do not continue under contract (if Form **CP 15 11** is attached);

11. All payroll expenses or the amount of payroll expense excluded (if Form **CP 15 10** is attached); and

12. Special deductions for mining properties (royalties unless specifically included in coverage; actual depletion commonly known as unit or cost depletion – not percentage depletion; welfare and retirement fund charges based on tonnage; hired trucks).

**Example No. 1 (Underinsurance):**

| When: | The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been | $400,000 |
|---|---|---|
| | The Coinsurance percentage is | 50% |
| | The Limit of Insurance is | $150,000 |
| | The amount of loss is | $80,000 |

Step **1:** $400,000 x 50% = $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

Step **2:** $150,000 ÷ $200,000 = .75

Step **3:** $80,000 x .75 = $60,000

We will pay no more than $60,000. The remaining $20,000 is not covered.

**Example No. 2 (Adequate Insurance):**

| When: | The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been | $400,000 |
|---|---|---|
| | The Coinsurance percentage is | 50% |
| | The Limit of Insurance is | $200,000 |
| | The amount of loss is | $80,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($400,000 x 50%). Therefore, the Limit of Insurance in this Example is adequate and no penalty applies. We will pay no more than $80,000 (amount of loss).

This condition does not apply to Extra Expense Coverage.

**E.     Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

**1.     Maximum Period Of Indemnity**

a. The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

b. The most we will pay for the total of Business Income loss and Extra Expense is the lesser of:

(1) The amount of loss sustained and expenses incurred during the 120 days immediately following the beginning of the "period of restoration"; or

**(2)** The Limit Of Insurance shown in the Declarations.

**2.** **Monthly Limit Of Indemnity**

    **a.** The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

    **b.** The most we will pay for loss of Business Income in each period of 30 consecutive days after the beginning of the "period of restoration" is:

        **(1)** The Limit of Insurance, multiplied by

        **(2)** The fraction shown in the Declarations for this Optional Coverage.

**Example:**

| When: | | |
|---|---|---|
| | The Limit of Insurance is | $120,000 |
| | The fraction shown in the Declarations for this Optional Coverage is | 1/4 |
| | The most we will pay for loss in each period of 30 consecutive days is: | |
| | $120,000 x 1/4 = $30,000 | |
| | If, in this example, the actual amount of loss is: | |
| | Days 1-30 | $40,000 |
| | Days 31-60 | $20,000 |
| | Days 61-90 | $30,000 |
| | | $90,000 |
| | We will pay: | |
| | Days 1-30 | $30,000 |
| | Days 31-60 | $20,000 |
| | Days 61-90 | $30,000 |
| | | $80,000 |

The remaining $10,000 is not covered.

**3.** **Business Income Agreed Value**

    **a.** To activate this Optional Coverage:

        **(1)** A Business Income Report/Work Sheet must be submitted to us and must show financial data for your "operations":

            **(a)** During the 12 months prior to the date of the Work Sheet; and

            **(b)** Estimated for the 12 months immediately following the inception of this Optional Coverage.

        **(2)** The Declarations must indicate that the Business Income Agreed Value Optional Coverage applies, and an Agreed Value must be shown in the Declarations. The Agreed Value should be at least equal to:

      **(a)**   The Coinsurance percentage shown in the Declarations; multiplied by

      **(b)**   The amount of Net Income and operating expenses for the following 12 months you report on the Work Sheet.

  **b.**   The Additional Condition, Coinsurance, is suspended until:

      **(1)**   12 months after the effective date of this Optional Coverage; or

      **(2)**   The expiration date of this policy;

     whichever occurs first.

  **c.**   We will reinstate the Additional Condition, Coinsurance, automatically if you do not submit a new Work Sheet and Agreed Value:

      **(1)**   Within 12 months of the effective date of this Optional Coverage; or

      **(2)**   When you request a change in your Business Income Limit of Insurance.

  **d.**   If the Business Income Limit of Insurance is less than the Agreed Value, we will not pay more of any loss than the amount of loss multiplied by:

      **(1)**   The Business Income Limit of Insurance; divided by

      **(2)**   The Agreed Value.

**Example:**

| When: | The Limit of Insurance is | $100,000 |
|---|---|---|
| | The Agreed Value is | $200,000 |
| | The amount of loss is | $80,000 |

Step **(a):** $100,000 ÷ $200,000 = .50

Step **(b):** .50 x $80,000 = $40,000

We will pay $40,000. The remaining $40,000 is not covered.

  **4.**   **Extended Period Of Indemnity**

     Under Paragraph **A.5.c., Extended Business Income**, the number "30" in Subparagraphs **(1)(b)** and **(2)(b)** is replaced by the number shown in the Declarations for this Optional Coverage.

**F.**   **Definitions**

  **1.**   **"Finished Stock"** means stock you have manufactured.

     "Finished stock" also includes whiskey and alcoholic products being aged, unless there is a Coinsurance percentage shown for Business Income in the Declarations.

     "Finished stock" does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this Coverage Part.

  **2.**   **"Operations"** means:

     **a.**   Your business activities occurring at the described premises; and

     **b.**   The tenantability of the described premises, if coverage for Business Income including "Rental Value" or "Rental Value" applies.

**3.**   **"Period of Restoration"** means the period of time that:

     **a.**   Begins:

         **(1)**   72 hours after the time of direct physical loss or damage for Business Income coverage; or

         **(2)**   Immediately after the time of direct physical loss or damage for Extra Expense coverage;

     caused by or resulting from any Covered Cause of Loss at the described premises; and

     **b.**   Ends on the earlier of:

         **(1)**   The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

         **(2)**   The date when business is resumed at a new permanent location.

     "Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

         **(1)**   Regulates the construction, use or repair, or requires the tearing down of any property; or

         **(2)**   Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

     The expiration date of this policy will not cut short the "period of restoration".

**4.**   **"Pollutants"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**5.**   **"Rental Value"** means Business Income that consists of:

     **a.**   Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the described premises which is occupied by you; and

     **b.**   Continuing normal operating expenses incurred in connection with that premises, including:

         **(1)**   Payroll; and

         **(2)**   The amount of charges which are the legal obligation of the tenant(s) but would otherwise be your obligations.

6. **"Suspension"** means:

   a. The slowdown or cessation of your business activities; or

   b. That a part or all of the described premises is rendered untenantable, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**NAMED WINDSTORM DEFINITION ENDORSEMENT**

The definition of a Named Windstorm is a Tropical Storm having sustained wind speeds of at least 39 MPH and/or a Hurricane having sustained wind speeds of at least 74 MPH and has been declared by the U.S. National Weather Service to be a Named Tropical Storm or Named Hurricane.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 10

Policy Number: ESP 7303712-00

Named Insured: MMI 82 LLC, CASA MORADA

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: March 15, 2017

00 EXP0051 00 08 14                                                        Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## NAMED WINDSTORM PERCENTAGE DEDUCTIBLE ENDORSEMENT
## (REPORTED VALUE)

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
BUILDERS RISK COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
DIFFERENCE IN CONDITIONS COVERAGE FORM
OTHER APPLICABLE INLAND MARINE COVERAGE FORMS
BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM
BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM
EXTRA EXPENSE COVERAGE FORM
CAUSES OF LOSS – BASIC FORM
CAUSES OF LOSS – BROAD FORM
CAUSES OF LOSS – SPECIAL FORM
CAUSES OF LOSS – NAMED WINDSTORM

### SCHEDULE

| Premises No. | Bldg. No. | Named Windstorm Deductible Percentage (enter 1%, 2%, 5% or other percent) | Minimum Deductible |
|---|---|---|---|
| All | All | 5% | $100,000 per occurrence |

This percentage shown above is subject to the minimum deductible per "occurrence" shown above, if any.

The Named Windstorm Deductible, as shown in the Schedule, applies to loss or damage to Covered Property caused directly or indirectly by Named Windstorm, regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.  If loss or damage from a covered weather condition other than Named Windstorm occurs, and that loss or damage would not have occurred but for the Named Windstorm, such loss or damage shall be considered to be caused by Named Windstorm and therefore part of the Named Windstorm "occurrence".

The Named Windstorm Deductible applies whenever there is an "occurrence" of Named Windstorm.

Nothing in this endorsement implies or affords coverage for any loss or damage that is excluded under the terms of the Water Exclusion or any other exclusion in this policy.  If this policy is endorsed to cover Flood under the Flood Coverage Endorsement (or if you have a flood insurance policy), a separate Flood Deductible applies to loss or damage attributable to Flood, in accordance with the terms of that endorsement or policy.

### NAMED WINDSTORM DEDUCTIBLE CALCULATION

**A.**   All Policies

   **1.**   A Deductible is calculated separately for, and applies separately to:

      **a.**   Each building, if two or more buildings sustain loss or damage;

    **b.**    The building and to personal property in that building, if both sustain loss or damage;

    **c.**    Personal property at each building, if personal property at two or more buildings sustains loss or damage;

    **d.**    Personal property in the open.

**2.**    We will not pay for loss or damage until the amount of loss or damage exceeds the applicable Deductible.  We will then pay the amount of loss or damage in excess of that Deductible, up to the applicable Limit of Insurance, after any reduction required by any of the following: Coinsurance Condition, Agreed Value Optional Coverage, Additional Condition – Need for Adequate Insurance or Additional Condition – Need for Full Reports.

**3.**    When property is covered under the Coverage Extension for Newly Acquired or Constructed Property: In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to a percentage of the value(s) of the property at time of loss. The applicable percentage for Newly Acquired or Constructed Property is the highest percentage shown in the Schedule for any described premises.

**B.**    Calculation of the Deductible

**1.**    Deductible calculation applicable to the following Coverage Forms:

    BUILDING AND PERSONAL PROPERTY COVERAGE FORM
    BUILDERS RISK COVERAGE FORM
    CONDOMINIUM ASSOCIATION COVERAGE FORM
    DIFFERENCE IN CONDITIONS COVERAGE FORM
    OTHER APPLICABLE INLAND MARINE COVERAGE FORMS

    In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to 1%, 2%, 5% or other percent (as shown in the Schedule) of the value of each unit of insurance of Covered Property at the time and at the location where the physical damage happened, and then only for its proportion of such excess.  The value(s) to be used are the latest value(s) shown in the most recent Report of Values on file with us.

    However:

    **a.**    If the most recent Report of Values shows less than the full value(s) of the property on the report dates, we will determine the deductible amount as a percentage of the full value(s) as of the report dates.

    **b.**    If the first Report of Values is not filed with us prior to loss or damage, we will determine the deductible amount as a percentage of the applicable Limit(s) of Insurance.

**2.**    Deductible calculation applicable to the following forms:

    BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM
    BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM
    EXTRA EXPENSE COVERAGE FORM

    In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to 1%, 2%, 5% or other percent (as shown in the Schedule) of the full value(s) that would have been earned in the 12 month period following the "occurrence" by use of the lost or damaged Covered Property, at the premises described in the Declarations where the physical damage happened, plus that proportion of the values at all other locations where

loss ensues that was directly affected by use of such lost or damaged Covered Property and that would have been earned in the 12 month period following the "occurrence".

3.   The percentages referenced in paragraphs **B.2.** and **B.3.** above are subject to a Minimum Deductible per "occurrence" as shown in the Schedule.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 11

Policy Number: ESP 7303712-00

Named Insured: MMI 82 LLC, CASA MORADA

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: March 15, 2017

00 EXP0195 00 03 15                                                                    Page 3 of 3

# CAUSES OF LOSS – SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning.   Refer to Section **G. Definitions.**

**A.**   **Covered Causes Of Loss**

When Special is shown in the Declarations, Covered Causes of Loss means Direct Physical Loss unless the loss is excluded or limited in this policy.

**B.**   **Exclusions**

**1.**   We will not pay for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**a.**   **Ordinance Or Law**

The enforcement of or compliance with any ordinance or law:

**(1)**   Regulating the construction, use or repair of any property; or

**(2)**   Requiring the tearing down of any property, including the cost of removing its debris.

This exclusion, Ordinance Or Law, applies whether the loss results from:

**(1)**   An ordinance or law that is enforced even if the property has not been damaged; or

**(2)**   The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

**b.**   **Earth Movement**

**(1)**   Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

**(2)**   Landslide, including any earth sinking, rising or shifting related to such event;

**(3)**   Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**(4)**   Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty.   Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in **b.(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**(5)**   Volcanic eruption, explosion or effusion.  But if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic Action, we will pay for the loss or damage caused by that fire, building glass breakage or Volcanic

Action.

Volcanic Action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**(a)**    Airborne volcanic blast or airborne shock waves;

**(b)**    Ash, dust or particulate matter; or

**(c)**    Lava flow.

With respect to coverage for Volcanic action as set forth in **(5)(a)**, **(5)(b)** and **(5)(c)**, all volcanic eruptions that occur within any 168-hour period will constitute a single "occurrence".

Volcanic Action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused.

**c.**    **Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

**d.**    **Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e.**    **Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

**(1)**    Originates away from the described premises; or

**(2)**    Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating Internet access or access to any electronic, cellular or satellite network.

**f.   War And Military Action**

    **(1)**    War, including undeclared or civil war;

    **(2)**    Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    **(3)**    Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g.   Water**

    **(1)**    Flood, surface water, waves (including tidal wave and tsunami), tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not (including storm surge);

    **(2)**    Mudslide or mudflow;

    **(3)**    Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment; or

    **(4)**    Water under the ground surface pressing on, or flowing or seeping through:

        **(a)**    Foundations, walls, floors or paved surfaces;

        **(b)**    Basements, whether paved or not; or

        **(c)**    Doors, windows or other openings; or

    **(5)**    Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1)**, **(3)**, or **(4)**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, as described in **g.(1)** through **g.(5)**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

Exclusions **B.1.a.** through **B.1.g.** apply whether or not the loss event results in widespread damage or affects a substantial area.

**2.**    We will not pay for loss or damage caused by or resulting from any of the following:

    **a.**    Artificially generated electrical, magnetic or electromagnetic energy or current, including electric arcing, that damages, disturbs, disrupts or otherwise interferes with

        any:

    **1.**        Electrical or electronic wire(s), devices, appliances, system or network; or

    **2.**        Device, appliance, system or network utilizing cellular or satellite technology.

But if fire results, we will pay for the loss or damage caused by that fire.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

    **(a)**    Electrical current, including arcing;

    **(b)**    Electrical charge produced or conducted by a magnetic or electromagnetic field;

    **(c)**    Pulse of electromagnetic energy; or

    **(d)**    Electromagnetic waves or microwaves.

**b.**    Delay, loss of use or loss of market.

**c.**    Smoke, vapor or gas from agricultural smudging or industrial operations.

**d.**    **(1)**    Wear and tear;

    **(2)**    Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

    **(3)**    Smog;

    **(4)**    Settling, cracking, shrinking or expansion;

    **(5)**    Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals.

    **(6)**    Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision.

    **(7)**    The following causes of loss to personal property:

        **(a)**    Dampness or dryness of atmosphere;

        **(b)**    Changes in or extremes of temperature; or

        **(c)**    Marring or scratching.

But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**e.**    Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We

will also pay for loss or damage caused by or resulting from the explosion of gases or

fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

f.   Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

g.   Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

   (1)   You do your best to maintain heat in the building or structure; or

   (2)   You drain the equipment and shut off the supply if the heat is not maintained.

h.   Dishonest or criminal act (including theft) by you, any of your partners, members, officers, managers, employees (including temporary employees and leased workers), directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

   (1)   Acting alone or in collusion with others; or

   (2)   Whether or not occurring during your normal hours of operation.

   This exclusion does not apply to acts of destruction by your employees (including temporary employees and leased workers) or authorized representatives; but theft by employees (including temporary employees and leased workers) or authorized representatives is not covered.

i.   Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

j.   Rain, snow, ice or sleet to personal property in the open.

k.   Collapse, including any of the following conditions of property or any part of the property:

   (1)   An abrupt falling down or caving in;

   (2)   Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

   (3)   Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to (1) or (2) above.

   But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

   This exclusion k. does not apply:

      (a)   To the extent that coverage is provided under the Additional Coverage, Collapse; or

      (b)   To collapse caused by one or more of the following:

         (i)   The "specified causes of loss";

           **(ii)**     Breakage of building glass;

           **(iii)**    Weight of rain that collects on a roof; or

           **(iv)**    Weight of people or personal property.

**l.** Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion, **l.,** does not apply to damage to glass caused by chemicals applied to the glass.

**m.** Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**3.** We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a.** Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **1.** above to produce the loss or damage.

**b.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c.** Faulty, inadequate or defective:

    **(1)** Planning, zoning, development, surveying, siting;

    **(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

    **(3)** Materials used in repair, construction, renovation or remodeling; or

    **(4)** Maintenance;

of part or all of any property on or off the described premises.

**4.** **Special Exclusions**

The following provisions apply only to the specified Coverage Forms:

**a.** **Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, Or Extra Expense Coverage Form**

We will not pay for:

    **(1)** Any loss caused by or resulting from:

        **(a)** Damage or destruction of "finished stock"; or

     **(b)**    The time required to reproduce "finished stock".

     This exclusion does not apply to Extra Expense.

**(2)**    Any loss caused by or resulting from direct physical loss or damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

**(3)**    Any increase of loss caused by or resulting from:

     **(a)**    Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

     **(b)**    Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period Of Indemnity Optional Coverage or any variation of these.

**(4)**    Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

**(5)**    Any other consequential loss.

**b.**    **Leasehold Interest Coverage Form**

**(1)**    Paragraph **B.1.a.** Ordinance Or Law, does not apply to insurance under this Coverage Form.

**(2)**    We will not pay for any loss caused by:

     **(a)**    Your cancelling the lease;

     **(b)**    The suspension, lapse or cancellation of any license; or

     **(c)**    Any other consequential loss.

**c.**    **Legal Liability Coverage Form**

**(1)**    The following exclusions do not apply to insurance under this Coverage Form:

     **(a)**    Paragraph **B.1.a.** Ordinance Or Law;

     **(b)**    Paragraph **B.1.c.** Governmental Action;

     **(c)**    Paragraph **B.1.d.** Nuclear Hazard;

     **(d)**    Paragraph **B.1.e.** Utility Services; and

     **(e)**    Paragraph **B.1.f.** War And Military Action.

**(2)**    The following additional exclusions apply to insurance under this Coverage

Form:

**(a)   Contractual Liability**

We will not defend any claim or "suit", or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement.  But this exclusion does not apply to a written lease agreement in which you have assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

**(i)**   Your assumption of liability was executed prior to the accident; and

**(ii)**   The building is Covered Property under this Coverage Form.

**(b)   Nuclear Hazard**

We will not defend any claim or "suit", or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

**5.   Additional Exclusion**

The following provisions apply only to the specified property:

**Loss Or Damage To Products**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair.  This exclusion applies to any effect that compromises the form, substance or quality of the product.  But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**C.   Limitations**

The following limitations apply to all policy forms and endorsements, unless otherwise stated.

**1.**   We will not pay for loss of or damage to property, as described and limited in this section.  In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

**a.**   Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment.  But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**b.**   Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

**c.**   The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

       **(1)**    The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

       **(2)**    The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

  **d.**    Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

      However, this limitation does not apply to:

       **(1)**    Building materials and supplies held for sale by you, unless they are insured under the Builders Risk Coverage Form; or

       **(2)**    Business Income coverage or Extra Expense coverage.

  **e.**    Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

  **f.**    Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

  **g.**    Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

       **(1)**    Dampness or dryness of atmosphere or of soil supporting the vegetation;

       **(2)**    Changes in or extremes of temperature;

       **(3)**    Disease;

       **(4)**    Frost or hail; or

       **(5)**    Rain, snow, ice or sleet.

**2.**    We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

  **a.**    Animals, and then only if they are killed or their destruction is made necessary.

  **b.**    Fragile articles such as statuary, marbles, chinaware and porcelains, if broken.  This restriction does not apply to:

       **(1)**    Glass; or

       **(2)**    Containers of property held for sale.

  **c.**    Builders' machinery, tools and equipment owned by you or entrusted to you, provided such property is Covered Property.

      However, this limitation does not apply:

       **(1)**    If the property is located on or within 100 feet of the described premises, unless

             the premises is insured under the Builders Risk Coverage Form; or

      **(2)**    To Business Income coverage or to Extra Expense coverage.

**3.**    The special limit shown for each category, **a.** through **d.**, is the total limit for loss of or damage to all property in that category.  The special limit applies to any one "occurrence" of theft, regardless of the types or number of articles that are lost or damaged in that "occurrence".  The special limits are:

    **a.**    $2,500 for furs, fur garments and garments trimmed with fur.

    **b.**    $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

    **c.**    $2,500 for patterns, dies, molds and forms.

    **d.**    $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

This limitation, **C.3.**, does not apply to Business Income coverage or to Extra Expense coverage.

**4.**    We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes.  But we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

    **a.**    Results in discharge of any substance from an automatic fire protection system; or

    **b.**    Is directly caused by freezing.

However, this limitation does not apply to Business Income coverage or to Extra Expense coverage.

**D.**  **Additional Coverage – Collapse**

The term Covered Cause of Loss includes the Additional Coverage – Collapse and applies only to an abrupt collapse as described and limited in **D.1.** through **D.5.** below.

**1.**    For the purposes of this Additional Coverage - Collapse:

    **a.**    Abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose;

    **b.**    A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of abrupt collapse;

    **c.**    A part of a building that is standing is not considered to be in a state of abrupt collapse even if it has separated from another part of the building;

    **d.**    A building that is standing or any part of a building that is standing is not considered to be in a state of abrupt collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**2.**    We will pay for direct physical loss or damage to Covered Property, caused by abrupt

collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:

**a.**   The "specified causes of loss" or breakage of building glass, all only as insured against in this Coverage Part;

**b.**   Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

**c.**   Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

**d.**   Weight of people or personal property;

**e.**   Weight of rain that collects on a roof;

**f.**   Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.   However, if the collapse occurs after construction, remodeling or renovation is complete and is caused in part by a cause of loss listed in **2.a.** through **2.e.**, we will pay for the loss or damage even if use of defective material or methods, in construction, remodeling or renovation, contributes to the collapse.

The criteria set forth in **1.a.** through **1.d.** do not limit the coverage otherwise provided under this Causes Of Loss form for the causes of loss listed in **2.a.**, **2.d.** and **2.e.**

**3.**   With respect to the following property:

**a.**   Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

**b.**   Awnings, gutters and downspouts;

**c.**   Yard fixtures;

**d.**   Outdoor swimming pools;

**e.**   Fences;

**f.**   Piers, wharves and docks;

**g.**   Beach or diving platforms or appurtenances;

**h.**   Retaining walls; and

**i.**   Walks, roadways and other paved surfaces;

if the abrupt collapse is caused by a cause of loss listed in **2.b.** through **2.f.**, we will pay for loss or damage to that property only if:

**a.**   Such loss or damage is a direct result of the abrupt collapse of a building insured under this Coverage Form; and

**b.**   The property is Covered Property under this Coverage Form.

**4.** If personal property abruptly falls down or caves in and such collapse is not the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

    **a.** The collapse of personal property was caused by a Cause of Loss listed in **2.a.** through **2.f.** above;

    **b.** The personal property which collapses is inside a building; and

    **c.** The property which collapses is not of a kind listed in **3.** above, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **4.** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

Collapse of personal property does not mean cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

This Additional Coverage – Collapse does not apply to personal property that has not abruptly fallen down or caved in.

**5.** This Additional Coverage, Collapse, will not increase the Limits of Insurance provided in this Coverage Part.

**F.   Additional Coverage Extensions**

**1.   Property In Transit**

This Extension applies only to your personal property to which this form applies.

    **a.** You may extend the insurance provided by this Coverage Part to apply to your personal property (other than property in the care, custody or control of your salespersons) in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory. For the purposes of this Coverage Extension, the coverage territory is extended to include Canada but only for a period of thirty (30) consecutive days. Coverage begins when the property leaves the United States and automatically ends after thirty (30) days or at the end of the policy period, whichever occurs first.

    **b.** Loss or damage must be caused by or result from one of the following causes of loss:

        **(1)** Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

        **(2)** Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the road bed.

        **(3)** Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

    **c.** The most we will pay for loss or damage under this Extension is $5,000.

This Coverage Extension is additional insurance. The Additional Condition, Coinsurance,

does not apply to this Extension.

**2.      Water Damage, Other Liquids, Powder Or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.  This Coverage Extension does not increase the Limit of Insurance.

**3.      Glass**

    **a.**      We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

    **b.**      We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building.  This does not include removing or replacing window displays.

This Coverage Extension, **F.3.,** does not increase the Limit of Insurance.

**G.      Definitions**

**1.      "Specified Causes of Loss"** means the following: Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

    **a.**      Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite.  This cause of loss does not include:

        **(1)**      The cost of filling sinkholes; or

        **(2)**      Sinking or collapse of land into man-made underground cavities.

    **b.**      Falling objects does not include loss or damage to:

        **(1)**      Personal property in the open; or

        **(2)**      The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

    **c.**      Water damage means:

        **(1)**      Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam; and

        **(2)**      Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe that is located off the described premises and is part of a municipal potable water supply system or municipal sanitary sewer system, if the breakage or cracking is

caused by wear and tear.

But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion. Therefore, for example, there is no coverage under this policy in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

To the extent that accidental discharge or leakage of water falls within the criteria set forth in **c.(1)** or **c.(2)** of this definition of "specified causes of loss," such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the surface of the ground.

**HIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**EXTERIOR INSULATION AND FINISH SYSTEM (EIFS) EXCLUSION**

This endorsement modifies insurance provided under all Coverage Parts.

It is agreed we will not pay for any loss or damage to any Building designed, manufactured, constructed, fabricated, prepared or installed with or that incorporates an "exterior insulation and finish system".

An "exterior insulation and finish system" means an exterior cladding or finish system applied to a house or other building, and consisting of:

1.   A rigid or semi-rigid sheathing or insulation board, including gypsum-based, wood-based, or insulation-based materials;

2.   The adhesive or mechanical fasteners used to attach the sheathing or insulation board to the substrate;

3.   A reinforcing mesh that is embedded in a coating applied to the sheathing or insulation board; and

4.   A finish coat.

An "exterior insulation and finish system" includes Dryvit® systems and synthetic stucco exterior cladding or finish systems.  However, an "exterior insulation and finish system" does not include a cement-based, polymer-enhanced stucco cladding system which:

1.   Incorporates a weather-resistive barrier pursuant to applicable building codes;

2.   Incorporates ribbed insulation sheathing with ribs aligned vertically to provide drainage;

3.   The manufacturer of the stucco components has a valid ICBO Evaluation Services Listing in good standing;

4.   There is no mixing of different manufacturers' products for the stucco system; and

5.   Satisfies all requirements of the applicable model building code and the applicable local building code.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 12

Policy Number: ESP 7303712-00

Named Insured: MMI 82 LLC, CASA MORADA

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: March 15, 2017

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**WARRANTIES**

This endorsement modifies insurance provided under this policy.

**SCHEDULE**

| Premises Number and/or Location Address | Building Number | Warranted Protective Safeguards Symbols Applicable |
|---|---|---|
| All | All | W4, W5 and W 13 |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** The following is added to the Commercial Property Conditions:

**Warranted Protective Safeguards**

1. As a condition of this insurance, you are required to both have in existence (as you or your representative have represented to us or have accepted as a condition for securing coverage under this policy) and to maintain the protective safeguards listed in the Schedule above and as described below.

2. The protective safeguards to which this endorsement applies are identified by symbols representing the Protective Safeguard described.

**IT IS WARRANTED BY YOU AS A CONDITION PRECEDENT TO THE ACCEPTANCE OF THIS INSURANCE THAT:**

"W1"     AUTOMATIC SPRINKLER SYSTEM -- The insured premises is protected by a fully functioning "Automatic Sprinkler System" and, based on that protection, you shall exercise due diligence in maintaining, in complete working order, all equipment and services pertaining to its operation which are under your control. You shall give immediate notice to us of any impairment in or suspension of such equipment or service.

"Automatic Sprinkler System" means: (a) Any automatic fire protective or extinguishing system, including connected sprinklers and discharge nozzles; ducts, pipes, valves and fittings; tanks, their component parts and supports; and pumps and private fire protection mains; and (b) When supplied from an automatic fire protective system, non-automatic fire protective systems; and hydrants, standpipes and outlets.

"W2"     CENTRAL STATION SPRINKLER ALARM SYSTEM - The insured premises is protected by a fully functioning Central Station Sprinkler Alarm System and, based on that protection, you shall exercise due diligence in maintaining, in complete working order, all equipment and services pertaining to its operation which are under your control. You shall give immediate notice to us of any impairment in or suspension of such equipment or service.

**"W3"**   CENTRAL STATION BURGLAR ALARM SYSTEM  - The insured premises is protected by a fully functioning Central Station Burglar Alarm System and, based on that protection, you shall exercise due diligence in maintaining, in complete working order, all equipment and services pertaining to its operation which are under your control. You shall give immediate notice to us of any impairment in or suspension of such equipment or service.

**"W4"**   CENTRAL STATION FIRE AND/OR SMOKE ALARM SYSTEM - The insured premises is protected by a fully functioning Central Station Fire And/Or Smoke Alarm System and, based on that protection, you shall exercise due diligence in maintaining, in complete working order, all equipment and services pertaining to its operation which are under your control. You shall give immediate notice to us of any impairment in or suspension of such equipment or service.

**"W5"**   ANSUL OR EQUIVALENT COOKING EXTINGUISHING SYSTEM  -- Insofar as is within your control, each and every commercial cooking occupancy of any location insured hereunder is protected by an approved ANSUL (or equivalent) chemical extinguishing system, including a hood, grease removal device and duct system, fully functioning and maintained in proper working order at all times during the currency of this policy.

You shall give immediate notice to us of any impairment in or suspension of such equipment or service.

**"W6"**   LOCKED and SECURED --  The premises insured under this policy shall be kept locked and secured against unauthorized entry throughout the currency of this policy.

**"W7"**   HEAT MAINTAINED - Heat will be maintained within the insured premises to a minimum of 50 degrees F.

**"W8"**   HEAT MAINTAINED OR PIPES DRAINED - Heat will be maintained within the premises to a minimum 50 degrees Farenheit or all pipes drained of all liquids.

**"W9"**   SECURITY SERVICE - Insofar as within your control, the insured premises shall be protected by a contracted on-premises Security Service 24 hours per day / 7 days per week. You shall give immediate notice to us of any impairment in or suspension of such service

**"W10"**   WATCHMAN -- Insofar as is within your control, a contracted on-premises security service, that includes a recording system or watch clock, shall be maintained and making hourly rounds covering the entire building, at such times as the premises are not in actual operation .

You shall give immediate notice to us of any impairment in or suspension of such service .

**"W11"**   CARETAKER -- The premises insured under this policy will have a caretaker on the premises throughout the currency of this policy. You shall give immediate notice to us of any impairment in or suspension of such service.

**"W12"**   ROLL DOWN GATE -- The premises insured shall be protected by roll down gates.

**"W13"**   Other:  Masonry Non-Combustible (MNC) Construction or better

**FAILURE TO COMPLY WITH THE WARRANTED PROTECTIVE SAFEGUARDS AS LISTED IN THE**

**SCHEDULE ABOVE SHALL SUSPEND ALL COVERAGE UNDER THIS POLICY FOR ALL PREMISES NOT IN COMPLIANCE, AND THIS SUSPENSION SHALL LAST UNTIL SUCH TIME AS THE PROTECTION OF THE PREMISES MEETS THE WARRANTED CONDITIONS STATED ABOVE.**

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 13

Policy Number: ESP 7303712-00

Named Insured: MMI 82 LLC, CASA MORADA

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: March 15, 2017

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

**A.    CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**1.**    This Coverage Part;

**2.**    The Covered Property;

**3.**    Your interest in the Covered Property; or

**4.**    A claim under this Coverage Part.

**B.    CONTROL OF PROPERTY**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**C.    INSURANCE UNDER TWO OR MORE COVERAGES**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**D.    LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Coverage Part unless:

**1.**    There has been full compliance with all of the terms of this Coverage Part; and

**2.**    The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

**E.    LIBERALIZATION**

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

**F.    NO BENEFIT TO BAILEE**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**G.    OTHER INSURANCE**

1.  You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

2.  If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**H.    POLICY PERIOD, COVERAGE TERRITORY**

Under this Coverage Part:

1.  We cover loss or damage commencing:

    a.  During the policy period shown in the Declarations; and

    b.  Within the coverage territory.

2.  The coverage territory is:

    a.  The United States of America (including its territories and possessions); and

    b.  Puerto Rico;

    unless otherwise stated within the applicable Coverage Form or an endorsement to the policy.

**I.    TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1.  Prior to a loss to your Covered Property or Covered Income.

2.  After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

    a.  Someone insured by this insurance;

    b.  A business firm:

        (1)  Owned or controlled by you; or

        (2)  That owns or controls you; or

    c.  Your tenant.

This will not restrict your insurance.

IN THE CIRCUIT COURT OF THE
16TH JUDICIAL CIRCUIT IN AND FOR
MONROE COUNTY, FLORIDA

MMI82 LLC d/b/a CASA MORADA,

        Plaintiff,

        CASE NO.:

v.

ARCH SPECIALTY INSURANCE
COMPANY,

        Defendant.

_____/

## PLAINTIFF'S FIRST SET OF INTERROGATORIES

    Plaintiff, MMI82 LLC d/b/a CASA MORADA (the "Insured"), pursuant to Rule 1.340 of the

Florida Rules of Civil Procedure, propounds the following First Set of Interrogatories upon

Defendant, ARCH SPECIALTY INSURANCE COMPANY (the "Insurance Company"), to be

answered in writing, under oath, within the time specified.

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true and correct copy of the foregoing was served via U.S. mail

to: ARCH SPECIALTY INSURANCE COMPANY c/o The Florida Chief Financial Officer as RA,

200 E. Gaines Street, Tallahassee, Florida 32399-4201, on this 23rd day of May 2018.

**Marin, Eljaiek, Lopez & Martinez P.L.**
Counsel for the Insured
2601 South Bayshore Drive, 18th Floor
Coconut Grove, Florida 33133
Telephone No. (305) 444-5969
Facsimile No. (305) 444-1939
Email: Eservice@mellawyers.com
Secondary Email: Mellaw4@mellawyers.com

By: */s/ Joe DePrado*_____
    Anthony M. Lopez, Esq.
    Florida Bar No. 13685
    Joe DePrado, Esq.
    Florida Bar No. 0127312

## DEFINITIONS AND INSTRUCTIONS

1.      Insert your answers in the space provided following each question.  If additional space is needed, so indicate in the space provided, prepare your answers on a separate paper, and attach the additional paper to your answers.

2.      Separately answer each interrogatory, and each subsection of each interrogatory. The term "you" and "your" means the party or parties to which this request is addressed, including its divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, accountants, attorneys, and all other persons acting or purporting to act on its behalf, as well as each partnership in which it is a partner.

3.      The terms "Insurance Company" or "Defendant" means the defendant in this action to which these Interrogatories are addressed, including its agents, attorneys, accountants, and all other persons acting or purporting to act on their behalf.  The terms "Insurance Company" or "Defendant" also includes the party's divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, attorneys, and accountants as well as each partnership in which it is a partner, and includes any other person, acting or purporting to act on its behalf.

4.      The terms "you" and "your" mean the party or parties to which these interrogatories are addressed, including its agents, attorneys, accountants, and all other persons acting or purporting to act on its behalf.

5.      The "Complaint" means the Complaint filed by the Insured in this action.

6.      The term "Claim" means any statement, concept, assertion, idea, allegation, fact, law, rule, theory, observation, cause of action, or principle whatsoever, based upon which Plaintiff

demands that she has suffered damages, or has a right to payment, as the result of any act or omission of Defendant.

7.      The terms "person" or "persons" mean any natural person, individual, proprietorship, partnership, corporation, association, organization, joint venture, firm, other business enterprise, governmental body, and group of natural persons or other entity, and includes any other person acting on behalf of a person.

8.      The term "contract" means any promise, or set or promises, which creates an obligation to do or not do a particular thing where there was meeting of the minds on a given proposition and an understanding and intention between the parties.

9.      The term "communication" means any information given, whether oral or written; any oral or written statement, conference, consultation, dialogue, colloquy, discussion, conversation, agreement, the sharing of knowledge by one with another, bargaining preparatory to making a contract or any expression of any kind.

10.     The term "document" means and includes any kind of written, typed, recorded or graphic matter, however produced or reproduced, of any kind or description, whether sent or received, and every record of every type, including originals, non-identical copies and drafts, and both sides of any documentation where information appears on both sides, and including but not limited to: letters, correspondence, memoranda, meeting transcripts or minutes, public filings or tax returns, papers, books, telegrams, bulletins, notices, announcements, instructions, charts, manuals, brochures, schedules, cables, telex messages, notes, notations, accountants' working papers, transcriptions, agendas, reports, recordings of telephone or other conversations, of interviews, of conferences or of

meetings, telephone messages, diaries, indices, books, reports, ledgers, working papers, invoices, worksheets, receipts, computer printouts, financial statements, schedules affidavits, contracts, canceled checks, statements, transcripts, magazine or newspaper articles, periodicals, releases and any and all drafts, alterations and modifications, changes and amendments of any of the foregoing, whether handwritten, printed or electronically prepared, filed or stored, affidavits, statements, summaries, opinions, reports, studies, analyses, evaluations, contracts, agreements, journals, statistical records, calendars, appointment books, diaries, lists, tabulations, sound recordings, computer print-outs, data processing input and output, microfilms, newspapers, magazines, books, periodicals or press releases, including information stored on any electromagnetic storage device, any written, printed, typed, recorded, or graphic matter, however produced or reproduced or stored to which you have or had access. "Document" shall also be deemed to include any summary of a document or documents called for hereafter.

11.     The term "all documents" means every document or group of documents as above defined that are known to you or that can be located or discovered by reasonably diligent efforts.

12.     As used herein the singular shall include the plural, the plural shall include the singular, and the masculine, feminine, and neuter shall include each of the other genders.

13.     The terms "and" as well as "or" shall be construed disjunctively as well as conjunctively as necessary to make the interrogatory inclusive rather than exclusive. The term "all" means "any and all." The term "each" means "each and every," and the term "every" means "each and every."

14.     The terms "refer" or "relate to" mean setting forth, pertaining to, memorializing,

constituting, embodying, discussing, analyzing, reflecting or otherwise concerning.

15.     The term "locate" or "location" means to state the present whereabouts of each Document and to identify the persons having possession, custody or control thereof.

16.     The term "to date" shall mean the date on which you answer these interrogatories.

17.     The term "including" means "including but not limited to".

18.     "Relating to" or "relevant to" means embodying, pertaining to, concerning, involving, constituting, comprising, reflecting, discussing, evidencing, referring to, consisting of, or having any logical or factual connection whatever with the subject matter in question.

19.     The term "Identify," when used with reference to a natural person, means state:

(a)     his full name and address (or, if the present address is not known, his last known address).

(b)     the full name and address of each of his employers, each corporation of which he is an officer or director and each business in which he is a principal.

(c)     his present (or, if the present is not known, his last known) position and his position or positions at the time of the act to which the interrogatory answer relate, and

(d)     such other information sufficient to enable Plaintiff to identify the person.

20.     "Identify," when used with reference to any entity other than a natural person, means:

(a)     state the full name of the entity, the type of entity (e.g., corporation, partnership, etc.), the address of its principal place of business, its principal business activity, and if it is a corporation, the jurisdiction under the laws of which it has been organized and the date of such organization.

21.     "Identify," when used with reference to a document or written communication, means state:

(a)     its nature (e.g., letter, telegram, floppy disc, computer printout, memorandum,

chart, report or study), date, author, date and place of preparation and the name and address of each addressee, if there is an addressee;

(b)    the identity of each signer to the document or communication;

(c)    the title or heading of the document or communication;

(d)    its substance;

(e)    its present (or, if the present is not known, the last known) location and custodian.

(f)    the identity of each person to whom a copy was sent and each date of its receipt and each date of its transmittal or other disposition by (I) respondent and (ii) any other person (naming such other person) who, at any time, either received, transmitted or otherwise disposed of such document or communication and each copy thereof;

(g)    the circumstances of each such receipt and each transmittal or other disposition, including identification of the person from whom received and the person to whom transmitted.

22.    "Identify," when used with reference to an oral transaction or oral communication, means state:

(a)    its nature (e.g., telephone call, conversation in person, etc.)

(b)    the date and place thereof.

(c)    the identity and address of each person participating therein, present during or witness to any part thereof.

(d)    identify each document in which such transaction or communication was recorded, described or referred to.

23.    "Identify" when used with reference to a lawsuit means state:

(a)    the caption of each lawsuit;

(b)    the court in which the lawsuit was filed;

      (c)     the case number;

      (d)     identify the parties, and

      (e)     a brief summary of the nature of the claim or charge.

24.     "Identify" when used with reference to an administrative claim or charge means state:

      (a)     identify the claimant or charging party;

      (b)     the administrative office were filed;

      (c)     the number assigned to identify the claim or charge, and

      (d)     a brief summary of the nature of the claim or charge.

25.     "Identify," when used in any other context that is herein above set forth, means to describe the act, word, situation, event, etc. (and/or conduct, course of action of any nature whatsoever, including without limitation any failure to act, to engage in any conduct or to pursue any course of action), to be identified as fully as possible and identify each document or communication or act in which such act, word, situation, event, conduct or course of action, etc., was recorded, refers or relates to each answer, forms all or part of the basis for an answer; and/or corroborates and answer.

26.     You may, in lieu of identifying any Document or written communication, attach a true copy of each Document as an exhibit to the answers to these interrogatories. On each occasion in which you choose to attach a Document as your answer to an interrogatory, identify the portion of the Document that answers the interrogatory.

27.     Identify each Document produced pursuant to an interrogatory by the paragraph number of the interrogatory in response to which it is produced and by the file from which the

document was produced.

28.     If any of the information furnished in an answer to all or part of an interrogatory is not within your personal knowledge, identify each person who has personal knowledge of the information furnished in such answer and each person who communicated to you any part of the information furnished.

29.     If the answer to all or any part of the interrogatory is not presently known or available to you, include a statement to that effect, furnish the information now known or otherwise available to you, and respond to the entire interrogatory by supplemental answer, in writing, under oath, within ten days from the time the entire answer becomes known or available to you, but. in no event less than five days prior to trial.

30.     If you contend that it would be unreasonably burdensome to obtain and provide all of the information called for in response to any one of these interrogatories or any subpart thereof, then in response to the appropriate interrogatory or subpart:

        (a)     set forth all such information that is available to you without undertaking what you contend to be an unreasonable burden;

        (b)     state with particularity the grounds on which you contend that additional efforts to obtain such information would be unreasonably burdensome; and

        (c)     describe with particularity the efforts made by you to secure such information, including, without limitation, the identity of all persons consulted, and files, records, and documents reviewed, and the identity of each person who participated in gathering such information, including the duration of time spent and nature of work done by each person.

31.     Unless your response to an interrogatory is complete when made, these interrogatories

are continuing insofar as you are required to promptly make further or supplemental answers if new information is discovered and/or acquired by you between the date of your initial answer and any time thereafter.

32.    If you claim in response to any request for production that any requested document is "privileged" and not subject to discovery, you shall so state expressly and, in addition, shall provide a privilege log, describing the nature of the documents, communications or things not produced or disclosed in a manner that, without revealing the information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

33.    If all of the information furnished in answer to all or part of an interrogatory is not within the personal knowledge of the affiant, identify each person to whom all or part of the information furnished is a matter of personal knowledge and each person who communicated to the affiant any part of the information furnished.

34.    To the extent precise and complete information cannot be furnished, such information as is available shall be supplied, together with an estimate of the precise and complete information. Where such an estimate is given, the method employed in making the estimate shall be described.

## INTERROGATORIES

1.      Please state the name, title, current business address, and phone number of all persons answering or assisting with the answering of this set of interrogatories.

2.      Please state the date that the Insurance Company first received notice from the Insured for a claim of benefits under the Policy for property damages as described in the Complaint in this lawsuit.

3.     In reference to the Insured's demand for appraisal, please state:

    a.     The date the decision to not proceed with appraisal of the claim was made.

    b.     Identify each person who participated in the decision to not proceed with appraisal of the Insured's claim.

    c.     Describe each and every fact upon which you relied in forming the basis for your decision not to proceed with appraisal of the Insured's claim.

    d.     Identify each document sent by the Insurance Company to the Insured detailing the reasons why the Insurance Company chose not to proceed to appraisal of the Insured's claim.

e.    State the location, including, page(s), line(s) and paragraph number(s), and the exact language contained in the Policy, which you used to base your decision to not proceed with appraisal of the Insured's claim.

4.    Identify each person, by name, address, phone number and position, whom on behalf of the Insurance Company, inspected the Insured Property in reference to the claim for benefits under the Policy, including his or her field of expertise and the date of each inspection.

5.    Identify each written estimate for repair or replacement, including the amount set forth in each estimate, which has been provided to the Insurance Company by the Insured in reference to the Insured's claim for benefits under the Policy.

6.      Identify all persons (other than the Insurance Company) believed or known by you, your agents or attorneys to have knowledge concerning any of the issues raised by the pleadings, specifying the subject matter about which witnesses have knowledge and state whether you have obtained any statements (oral, written or recorded) from any of said witnesses, list the dates any such witness statements were taken, by whom any such witness were taken and who has the present possession, custody and control of any such statements.

7.      Identify all persons who, on the Insurance Company's behalf, have in any way participated in the investigation, evaluation, adjusting or handling of the claim involved hereto. Please specify the nature of the participation for each and every such person and give the time period during which they participated.

8.      Refer to the page and line of any and all written guidelines you used in the claims handling process that justify the investigation and claims handling such as was conducted with regards to the claims presented by the Insured.

9.      Please describe all requests made by the Insurance Company upon the Insured (i.e., requests for examination under oath, information, documents, sworn proofs of loss, etc.,) in reference to this claim and the dates made.

10.     With reference to each of your affirmative defenses raised in the lawsuit, please describe each and every fact upon which you rely to substantiate such affirmative defense, including identification of all witnesses to each such fact.

IN WITNESS WHEREOF, the Insurance Company has executed the foregoing answers to interrogatories and states that same are true and correct to the best of the undersigned's knowledge and belief.

_____

ARCH SPECIALTY INSURANCE COMPANY

By: _____

Title: _____

STATE OF FLORIDA                    }
                                    }
COUNTY OF _____}

BEFORE ME, the undersigned authority, personally appeared _____, who is personally known to me or who has produced _____ as identification, being first duly sworn according to law, deposes and says that he executed the foregoing Answers to Plaintiff's First Set of Interrogatories and that they are true and correct to the best of his/her knowledge and belief.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of my office; in the County and State last aforesaid, this _____ day of _____2018.

IN THE CIRCUIT COURT OF THE
16TH JUDICIAL CIRCUIT IN AND FOR
MONROE COUNTY, FLORIDA

MMI82 LLC d/b/a CASA MORADA,

           Plaintiff,

CASE NO.:

v.

ARCH SPECIALTY INSURANCE
COMPANY,

           Defendant.

_____/

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Plaintiff, MMI82 LLC d/b/a CASA MORADA (the "Insured"), pursuant to Rule 1.350 of the

Florida Rules of Civil Procedure, hereby request that Defendant, ARCH SPECIALTY INSURANCE

COMPANY (the "Insurance Company"), make available for inspection and duplication, in response

to each numbered paragraph, all documents specified herein which are in its possession, custody or

control or in the possession, custody or control of its agents, accountants or attorneys. Defendant is

requested to make such production within the time period prescribed either by the Florida Rules of

Civil Procedure or by order of the Court, at the offices of **Marin, Eljaiek, Lopez & Martinez P.L.,**

**2601 South Bayshore Drive, 18th Floor, Coconut Grove, Florida 33133.**

**I.**    **DEFINITIONS AND INSTRUCTIONS**

    1.    The terms "you", "your(s)", "yourselves", "defendant", and/or "Insurance Company"

means the party or parties to which this request is addressed, and any agents, representatives,

attorneys or other persons acting or purporting to act, on its behalf.

2.      The term "person" means any natural person, individual, proprietorship, partnership, corporation, association, organization, joint venture, firm, other business enterprise, governmental body, group of natural persons, or other entity.

3.      The "Complaint" means the Complaint filed by the Insured in this action.

4.      The term "document" shall mean any written or graphic matter and other means of preserving thought or expression and all tangible things from which information can be processed or transcribed, including the originals and all non-identical copies, whether different from the original by reason of any notation made on such copy or otherwise, including, but not limited to, correspondence, memoranda, notes, messages, letters, telegrams, teletype, telefax, bulletins, meetings or other communications, inter-office and intra-office telephone calls, diaries, chronological data, minutes, books, reports, studies, summaries, pamphlets, bulletins, printed matter, charts, ledgers, invoices, work-sheets, receipts, returns, computer printouts, prospectuses, financial statements, schedules, affidavits, contracts, canceled checks, statements, transcripts, statistics, surveys, magazine or newspaper articles, releases (and any and all drafts, alterations or modifications, changes and amendments of any of the foregoing), graphic or aural records or representations of any kind (including without limitation, photographs, microfiche, microfilm, videotape, records and motion pictures) and electronic, mechanical or electric records or representations of any kind (including without limitation, tapes, cassettes, discs and records).

5.      The term "all documents" means every document or group of documents as above defined that are known to you or that can be located or discovered by reasonably diligent efforts.

6.      The term "Insurance Company" shall refer to the Defendant in this action, its affiliates, subsidiaries, predecessors, successors, agents, attorneys and/or anyone else acting in its behalf.

7.      The term "communication(s)" means every manner or means of disclosure, transfer or exchange of information, whether in person, by telephone, mail, personal delivery or otherwise.

8.      As used herein, the singular shall include the plural, the plural shall include the singular, and the masculine, feminine and neuter shall include each of the other genders.

9.      The terms "and", "as well as" and "or" shall be construed disjunctively as well as conjunctively as necessary to make the interrogatory inclusive rather than exclusive.  The term "all" means "any and all."  The terms "each" and "every" means "each and every," the term "including" means "including without limitation."

10.     The terms "referring to" or "relating to" mean setting forth, pertaining to, memorializing, constituting, embodying, discussing, analyzing, reflecting or otherwise concerning.

11.     The terms "locate" or "location" means to state the present whereabouts of each document and to identify the person(s) having possession, custody or control thereof.

12.     The term "to date" shall mean the date on which you respond to this request.

13.     When producing the required documents, please keep all documents segregated by the file in which the documents are contained and indicate the name of the file in which the documents are contained and the name of the documents being produced.

14.     When producing the required documents, please produce all other documents that are clipped, stapled or otherwise attached to any requested document.

15.     In the event such file(s) or document(s) has (have) been removed, either for the purpose of this action or for some other purpose, please state the name and address of the person who removed the file, the title of the file and each sub-file, if any, maintained within the file, and the present location of the file.

16.     The words "and" and "or" shall be construed either conjunctively or disjunctively to bring within the scope of these requests any documents which might otherwise be construed to be outside their scope.

17.     If you claim that the attorney/client or any other privilege or the attorney's work product doctrine applies to any document, the production of which is called for by these requests, then for each such document, state its date, subject matter, author(s), recipient(s), present custodian and all past custodians, and such additional information concerning the claim of privilege or work product doctrine as will permit the adjudication of the propriety of the claim.

18.     If you contend that it would be unreasonably burdensome to obtain and provide all of the documents called for in response to any one of these requests, then in response to the appropriate request:

    (a)     furnish each such document that is available to you without undertaking what you contend to be an unreasonable burden;

    (b)     state with particularity the grounds on which you contend that additional efforts to obtain such documents would be unreasonably burdensome; and

    (c)     describe with particularity the efforts made by you to secure such documents, including, without limitation, the identity of all persons consulted, and files, records, and documents reviewed, and the identity of each person who participated in gathering such documents, including the duration of time spent and nature of work done by each

person.

19.     Unless otherwise indicated, all requests include the time period from the date of the Loss through the date you respond to this request.

20.     The term "Insured" shall refer to the Plaintiff(s), affiliates, predecessors, successors, agents, attorneys and/or anyone else acting in their behalf.

## II.     LOST/DESTROYED DOCUMENTS

If any document to be produced was, but is no longer, in your possession, custody or control and/or has been destroyed or is otherwise incapable of production or state: (a) the date, place and means of the destruction; (b) the name and address of each person deciding upon, participating in and having knowledge of the destruction; (c) the reason for the destruction; (d) if not destroyed, the reason why the document is incapable of production; and (e) the subject matter of the document.

## III.     DOCUMENTS REQUESTED

1.     A true and correct certified copy of the insurance policy provided by the Insurance Company to the Insured, for which this lawsuit is premised, including but not limited to, declaration sheet(s), all addendums and attachments.

2.     Each and every timesheet, log and all other documents reflecting time spent by the Insurance Company at the Property.

3.     Each and every document, evidencing the name, address, and the position/relationship with the Insurance Company, of every individual who has visited or plans to visit the Property on behalf of the Insurance Company.

4.     Any and all correspondence or written communications from the Insurance Company to the Insured, which in any manner pertain to the Insured's loss as described in the Complaint.

5.      Any and all correspondence or written communications from the Insured, to the Insurance Company which in any manner pertains to the Insured's loss as described in the Complaint.

6.      Any and all photographs taken by the Insurance Company of the Property.

7.      All documents containing information regarding a statement by the Insured at any time during the Insurance Company's handling of the Insured's loss, including adjuster notes, claim reports, interoffice memorandum, tape recordings and any transcripts or written statements from the Insured.

8.      Any and all bills or estimates for repairs to the Property submitted to the Insurance Company by the Insured.

9.      Any and all checks paid to, or on behalf of the Insured, representing insurance coverage payment(s) for the loss.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via U.S. mail to: ARCH SPECIALTY INSURANCE COMPANY c/o The Florida Chief Financial Officer as RA, 200 E. Gaines Street, Tallahassee, Florida 32399-4201, on this 24th day of May, 2018.

**Marin, Eljaiek, Lopez & Martinez P.L.**

Counsel for the Insured
2601 South Bayshore Drive, 18th Floor
Coconut Grove, Florida 33133
Telephone No. (305) 444-5969
Facsimile No. (305) 444-1939
Email: Eservice@mellawyers.com
Secondary Email: Mellaw4@mellawyers.com

By: /s/ Joe DePrado

        Anthony M. Lopez, Esq.
        Florida Bar No. 13685
        Joe DePrado, Esq.
        Florida Bar No. 0127312

## FORM 1.997. CIVIL COVER SHEET

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner for the use of the Clerk of Court for the purpose of reporting judicial workload data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

---

**I.    CASE STYLE**

IN THE CIRCUIT COURT OF THE <u>SIXTEENTH</u>    JUDICIAL CIRCUIT,
IN AND FOR <u>MONROE</u>    COUNTY, FLORIDA

Case No.:_____
Judge: _____

<u>MMI 82 LLC d/b/a Casa Morada</u>
 Plaintiff
                vs.
<u>Arch Specialty Insurance Company</u>
Defendant

---

**II.    TYPE OF CASE**

☐ Condominium
☒ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence – other
    ☐ Business governance
    ☐ Business torts
    ☐ Environmental/Toxic tort
    ☐ Third party indemnification
    ☐ Construction defect
    ☐ Mass tort
    ☐ Negligent security
    ☐ Nursing home negligence
    ☐ Premises liability – commercial
    ☐ Premises liability – residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
    ☐ Commercial foreclosure $0 - $50,000
    ☐ Commercial foreclosure $50,001 - $249,999
    ☐ Commercial foreclosure $250,000 or more
    ☐ Homestead residential foreclosure $0 – 50,000
    ☐ Homestead residential foreclosure $50,001 - $249,999
    ☐ Homestead residential foreclosure $250,000 or more
    ☐ Non-homestead residential foreclosure $0 - $50,000
    ☐ Non-homestead residential foreclosure $50,001 - $249,999

☐ Non-homestead residential foreclosure $250,000 or more
☐ Other real property actions $0 - $50,000
☐ Other real property actions $50,001 - $249,999
☐ Other real property actions $250,000 or more

☐ Professional malpractice
    ☐ Malpractice – business
    ☐ Malpractice – medical
    ☐ Malpractice – other professional
☐ Other
    ☐ Antitrust/Trade Regulation
    ☐ Business Transaction
    ☐ Circuit Civil - Not Applicable
    ☐ Constitutional challenge-statute or ordinance
    ☐ Constitutional challenge-proposed amendment
    ☐ Corporate Trusts
    ☐ Discrimination-employment or other
    ☐ Insurance claims
    ☐ Intellectual property
    ☐ Libel/Slander
    ☐ Shareholder derivative action
    ☐ Securities litigation
    ☐ Trade secrets
    ☐ Trust litigation

**EXHIBIT**

**3 Composite**

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

III. **REMEDIES SOUGHT** (check all that apply):
    ☒   Monetary;
    ☐   Non-monetary declaratory or injunctive relief;
    ☐   Punitive

IV. **NUMBER OF CAUSES OF ACTION: (     )**
    (Specify)

    <u>2</u>

V. **IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐   Yes
    ☒   No

VI. **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☒   No
    ☐   Yes – If "yes" list all related cases by name, case number and court:

VII. **IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☒   Yes
    ☐   No

---

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature <u>s/ Anthony M Lopez</u>    FL Bar No.: <u>13685</u>
    Attorney or party                (Bar number, if attorney)

    <u>Anthony M Lopez    05/30/2018</u>
    (Type or print name)               Date

RECEIVED AS STATUTORY REGISTERED AGENT on 27 July, 2018 and served on defendant or named party on 01 August, 2018 by the Florida Department of Financial Services

| IN THE CIRCUIT COURT OF THE 16TH JUDICIAL CIRCUIT IN AND FOR MONROE COUNTY, FLORIDA ||||
| **DIVISION**<br>X CIVIL<br>Q OTHER | **SUMMONS** || **CASE NUMBER**<br><br>18-CA-000411-P |
| **PLAINTIFF(S)**<br>MMI82 LLC d/b/a CASA MORADA | **DEFENDANT(S)**<br>ARCH SPECIALTY INSURANCE COMPANY || **CLOCK IN** |

THE STATE OF FLORIDA:

To Each Sheriff of the State:

You ARE COMMANDED to serve this summons and a copy of the ***Complaint, Plaintiff's First Set of Interrogatories, and Plaintiff's First Request for Production*** in this action on defendant:

### ARCH SPECIALTY INSURANCE COMPANY
### c/o THE FLORIDA CHIEF FINANCIAL OFFICER as RA
### 200 E. GAINES STREET
### TALLAHASSEE, FLORIDA 32399-4201

Defendant is required to serve written defenses to the Complaint on Plaintiff's Attorney:
Joe DePrado, Esq., Florida Bar No. 0127312, whose address 2601 S. Bayshore Drive, 18th Floor, Miami, Florida 33133 Telephone No.: 305/444-5969, Telefax No.: 305/444-1939, Email: Eservice@mellawyers.com, Secondary Email: Mellaw4@Mellawyers.com within 20 days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against the defendant for the relief demanded in the Complaint.

| Kevin Madok<br><br>CLERK OF COURTS | BY [signature]<br>DEPUTY CLERK | DATE<br>7 · 13 · 2018 |

AMERICANS WITH DISABILITIES ACT OF 1990
IN ACCORDANCE WITH THE AMERICANS WITH DISABILITIES ACT OF 1990, PERSONS NEEDING A SPECIAL ACCOMMODATION TO PARTICIPATE IN THIS PROCEEDING SHOULD CONTACT THE ASA COORDINATOR, NO LATER THAN 7 DAYS PRIOR TO THE PROCEEDINGS AT 305/375-2006 (VOICE) OF 305/375-2007 (TDD)

COURT SEAL

[1992058/1]

IN THE CIRCUIT COURT OF THE 16TH JUDICIAL CIRCUIT
IN AND FOR MONROE COUNTY, FLORIDA

MM182 LLC d/b/a CASA MORADA,

                            CASE NO.:  18-CA-000411-P

          Plaintiff,

vs.

ARCH SPECIALTY INSURANCE
COMPANY,

          Defendant.
_____/

## DEFENDANT'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF

Defendant, ARCH SPECIALTY INSURANCE COMPANY ("ARCH"), by and through its undersigned counsel, hereby requests that the Plaintiff, MM182 LLC d/b/a CASA MORADA, produce a copy of the documents listed on the attached Exhibit "A," **within thirty (30) days of service hereof**, at the offices of BUTLER WEIHMULLER KATZ CRAIG LLP, 400 N. Ashley Drive, Suite 2300, Tampa, Florida 33602, where said documents shall be left for a reasonable period of time for copying or reproduction.

The Plaintiff will be in compliance with this Request for Production if said Plaintiff provides to the undersigned, by mail, a complete and legible copy of the requested items prior to the date fixed for production.

(Signature Block on following page)

BUTLER WEIHMULLER KATZ CRAIG LLP

_____
CHRISTOPHER M. RAMEY, ESQ.
Florida Bar No.:  0044808
cramey@butler.legal
Secondary:  lfarrell@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602
Telephone:   (813) 281-1900
Facsimile:     (813) 281-0900
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy herein has been furnished to:

Anthony M. Lopez, Esq.
Joe R. De Prado, Esq.
Marin, Eljaiek, Lopez & Martinez, P.L
2601 South Bayshore Drive, 18th Floor
Coconut Grove, FL  33133
Attorneys For:  Plaintiff

via E-Portal on August 24, 2018.

_____
CHRISTOPHER M. RAMEY, ESQ.

## **INSTRUCTIONS**

1.   You are instructed either to produce documents as they are kept in the usual course of business or to produce documents organized and labeled to correspond with the categories in this Request.  Documents are to be produced in full and unexpurgated form.

2.   This Request shall be deemed continuing so as to require further and supplemental production in the event that the party requested to produce, or any of its attorneys, agents or representatives, obtains or discovers additional information or documents between the time of the initial production and the time of hearing or trial.

3.   If any documents covered by this Request are withheld by reason of a claim of privilege, work product immunity or other ground of non-production, a list is to be furnished at the time that the documents are produced identifying each such document for which the privilege is claimed specifically by its nature (e.g., letter. memorandum, etc.) together with the following information with respect to any such document withheld:  author; recipient; sender; indicated or blind copies; date; subject matter; basis on which the privilege is claimed; number of pages; and the paragraph of this Request to which such document relates.

4.   If a portion of an otherwise responsive document contains information that is subject to a claim of privilege, only those portions of the document subject to the claim of privilege shall be deleted or redacted from the document and the rest of the document shall be produced.

5.   In the event that any document called for by this Request has been destroyed, lost, discarded or otherwise disposed of, each such document is to be identified as completely as possible, including, without limitation, the following information: author; recipient; sender; subject matter; date prepared or received; date of disposal; person currently in possession of the document; and the person disposing of the document.

6.   All objections to any category of documents to be produced pursuant to this Request or to any definition or instruction it contains shall be in writing and delivered to Defendant's counsel within the time provided in the Florida Rules of Civil Procedure or at such other time as is agreed upon by the parties or ordered by this Court.

7.   Where identification of a document is requested, please set forth the identity of its author or originator, the date of such authorship or origination, the identity of each person to whom the original or copy was addressed or delivered, the identity of each person known or reasonably believed to have present possession, custody, or control thereof, and a brief description of the subject matter thereof.

8.     Where identification of a person is requested, please set forth the person's name, last-known home and business address and telephone number, and relation to Plaintiff, if any.

9.     This Request for Production of Documents shall be deemed to be continuing so as to require further and supplemental responses as specified in the Florida Rules of Civil Procedure.

## **DEFINITIONS**

1.   "Plaintiff", means Plaintiff, MM182 LLC d/b/a CASA MORADA, its affiliates, agents, employees and representatives.

2.   "ARCH" means Defendant, ARCH SPECIALTY INSURANCE COMPANY, its agents, employees and representatives.

3.   The "Subject Property" means the property located at 136 Madeira Rd., Islamorada, FL 33065.

4.   The "Subject Claim" shall refer to Claim #000013114410, with a date of loss of September 10, 2017.

5.   The term "representative" as used herein with regard to a person or entity means and includes each and every present and former director, officer, partner, employee, agent, independent consultant or expert or other person (including attorneys) acting or purporting to act on behalf of the person or entity.

6.   The term "document" or "documents" is used in its broadest sense and includes, without limitation, drafts, documents whether printed, recorded, stored or reproduced by any mechanical or electronic process, or written or produced by hand, and including computer tapes (including backup tapes) and all other computer-related documents, within your possession, custody or control. "Documents" shall also include (1) each copy that is not identical to the original or to any other copy, and (2) any tangible thing that is called for by or identified in response to any request.  "Document" as used herein shall be construed broadly to include all documents and things within the scope of the Florida Rules of Civil Procedure and refers to all writings or other graphic matter, as well as any other medium by which information is stored or recorded.  It includes originals, drafts, copies and reproductions; and it includes, without limiting the generality of the foregoing, letters; memoranda; reports and/or summaries of investigations; police reports; accident reports; opinions or reports of consultants; diagrams; marginal comments appearing on any documents; accounts; telegrams; studies; lists of persons attending meetings or conferences; records or memoranda of telephone conversations; written statements; transcripts or recorded statements; recorded statements; records of personal conversations or interviews; calculations; computations; specifications; drawings; advertisements; circulars; trade letters; press releases; prints; recordings; positive or negative films, slides or photographs; magnetic, electronic or video tapes; computer tapes, cards or printouts; and all other things of like nature; and any and all containers, boxes or other receptacles or repositories housing or containing such "documents."

7.   The term "communication" shall mean any transmission of information by any means, including, without limitation, by spoken language, electronic transmission of data or any other means.  The term "communication" shall include, without

limitation, any copies of written information received by the person or entity responding to this request, even if such person or entity is not the primary or direct addressee of such written information.

8.   The term "referring" or "relating" shall mean showing, disclosing, averting to, comprising, evidencing, constituting or reviewing.

9.   "Person" means a natural person, firm, association, partnership, corporation or other firm of legal or business entity, public or private.

10.  The singular includes the plural and vice versa; the words "and" and "or" shall be both conjunctive; the word "all" means "any and all"; the word "any" means "any and all"; the word "including" means "including, without limitation."

11.  All other words have their plain and ordinary meaning.

## EXHIBIT "A"

1.   All estimates, proposals, contracts, written agreements, change orders, invoices, receipts, correspondence or all other documents concerning the damages you are seeking in your insurance claim.

2.   All contracts, change orders, proposals, invoices, receipts, statements, cancelled checks, investigative reports and all other records demonstrating repairs, renovations, modifications, or additions performed to the Subject Property from the date of purchase to the present date.

3.   All records of expenses you have incurred that are part of your insurance claim.

4.   All documents provided by any third party to the Plaintiff or its agents and/or representatives regarding the claimed damage to the Subject Property.

5.   All appraisals, inspections, disclosures, or warranties obtained or provided pertaining to the insured premises.

6.   All documents the Plaintiff contends support its insurance claim and complaint.

7.   All documents supporting or demonstrating any awards, settlements and/or payments received from ARCH or any other source pertaining to the damages you are seeking in the insurance claim.

8.   All documents supporting or demonstrating all insurance claims made by you and/or your representatives for any type of damage associated with Subject Property.

9.   All photographs or videos which depict the alleged damage at the Subject Property on or after the claimed date of loss.

10.  All photographs or videos which show the condition of the Subject Property prior to the claimed date of loss.

11.  All documents identified, referenced, relied upon or indicated in Plaintiff's Answers to Defendant's First Set of Interrogatories.

12.  All documents that evidence any ownership or other controlling or possessory interest by the members of MM182 LLC d/b/a CASA MORADA.

IN THE CIRCUIT COURT OF THE 16TH JUDICIAL CIRCUIT
IN AND FOR MONROE COUNTY, FLORIDA

MM182 LLC d/b/a CASA MORADA,

                    Plaintiff,

vs.

CASE NO.:  18-CA-000411-P

ARCH SPECIALTY INSURANCE
COMPANY,

                    Defendant.

_____/

**DEFENDANT'S NOTICE OF SERVING**
**FIRST SET OF INTERROGATORIES TO PLAINTIFF**

Defendant, ARCH SPECIALTY INSURANCE COMPANY ("ARCH"), by and through its undersigned counsel and pursuant to Florida Rule of Civil Procedure 1.340, hereby files its notice of serving First Set of Interrogatories to Plaintiff, MM182 LLC d/b/a CASA MORADA, numbered 1 through 4, which are to be answered within thirty (30) days after service, by Plaintiff, in writing and under oath, inserting said answers upon the original and serving the original on Defendant's counsel pursuant to the Florida Rules of Civil Procedure.

BUTLER WEIHMULLER KATZ CRAIG LLP

_____
CHRISTOPHER M. RAMEY, ESQ.
Florida Bar No.:  0044808
cramey@butler.legal
Secondary: lfarrell@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602
Telephone:   (813) 281-1900
Facsimile:     (813) 281-0900
Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I certify that the foregoing <u>Notice</u> and <u>Interrogatories</u> have been furnished by e-

Portal on August 24, 2018 to:

      Anthony M. Lopez, Esq.
      Joe R. De Prado, Esq.
      Marin, Eljaiek, Lopez & Martinez, P.L
      2601 South Bayshore Drive, 18th Floor
      Coconut Grove, FL  33133
      Attorneys For:  Plaintiff

CHRISTOPHER M. RAMEY, ESQ.

## **INSTRUCTIONS**

1. You are instructed either to produce documents as they are kept in the usual course of business or to produce documents organized and labeled to correspond with the categories in this Interrogatory. Documents are to be produced in full and unexpurgated form.

2. If any documents covered by this Interrogatory are withheld by reason of a claim of privilege, work product immunity or other ground of non-production, a list is to be furnished at the time that documents are produced identifying each such documents for which the privilege is claimed specifically by its nature (<u>e.g.</u>, letter, memorandum, etc.) together with the following information with respect to any such document withheld:  author; recipient; sender; indicated or blind copies; date; subject matter; basis on which the privilege is claimed; number of pages; and the paragraph of this Interrogatory to which such document relates.

3. If a portion of an otherwise responsive document contains information that is subject to a claim of privilege, only those portions of the document subject to the claim of privilege shall be deleted or redacted from the document and the rest of the document shall be produced.

4. In the event that any document called for by this Interrogatory has been destroyed, lost, discarded or otherwise disposed of, each such document is to be identified as completely as possible, including, without limitation, the following information:  author; recipient; sender; subject matter; date prepared or received; date of disposal; person currently in possession of the document; and the person disposing of the document.

5. All objections to any category of documents to be produced pursuant to this Interrogatory or to any definition or instruction it contains shall be in writing and delivered to defendant's counsel within the time provided in the Florida Rules of Civil Procedure or at such other time as is agreed upon by the parties or ordered by this Court.

6. Where identification of a document is requested, please set forth the identity of its author or originator, the date of such authorship or origination, the identity of each person to whom the original or copy was addressed or delivered, the identity of each person known or reasonably believed to have present possession, custody, or control thereof, and a brief description of the subject matter thereof.

7. Where identification of a person is requested, please set forth the person's name, last-known home and business address and telephone number, and relation to Plaintiff, if any.

## **DEFINITIONS**

1.      "Plaintiff", means Plaintiff, MM182 LLC d/b/a CASA MORADA, its affiliates, agents, employees and representatives.

2.      "ARCH" means Defendant, ARCH SPECIALTY INSURANCE COMPANY, its agents, employees and representatives.

3.      The "Subject Property" means the property located at 136 Madeira Rd., Islamorada, FL 33065.

4.      The "Subject Claim" shall refer to Claim #000013114410, with a date of loss of September 10, 2017.

5.      The term "representative" as used herein with regard to a person or entity means and includes each and every present and former director, officer, partner, employee, agent, independent consultant or expert or other person (including attorneys) acting or purporting to act on behalf of the person or entity.

6.      The term "document" or "documents" is used in its broadest sense and includes, without limitation, drafts, documents whether printed, recorded, stored or reproduced by any mechanical or electronic process, or written or produced by hand, and including computer tapes (including backup tapes) and all other computer-related documents, within your possession, custody or control. "Documents" shall also include (1) each copy that is not identical to the original or to any other copy, and (2) any tangible thing that is called for by or identified in response to any request.  "Document" as used herein shall be construed broadly to include all documents and things within the scope of the Florida Rules of Civil Procedure and refers to all writings or other graphic matter, as well as any other medium by which information is stored or recorded.  It includes originals, drafts, copies and reproductions; and it includes, without limiting the generality of the foregoing, letters; memoranda; reports and/or summaries of investigations; police reports; accident reports; opinions or reports of consultants; diagrams; marginal comments appearing on any documents; accounts; telegrams; studies; lists of persons attending meetings or conferences; records or memoranda of telephone conversations; written statements; transcripts or recorded statements; recorded statements; records of personal conversations or interviews; calculations; computations; specifications; drawings; advertisements; circulars; trade letters; press releases; prints; recordings; positive or negative films, slides or photographs; magnetic, electronic or video tapes; computer tapes, cards or printouts; and all other things of like nature; and any and all containers, boxes or other receptacles or repositories housing or containing such "documents."

7.      The term "communication" shall mean any transmission of information by any means, including, without limitation, by spoken language, electronic transmission of data or any other means.  The term "communication" shall include, without

limitation, any copies of written information received by the person or entity responding to this request, even if such person or entity is not the primary or direct addressee of such written information.

8.      The term "referring" or "relating" shall mean showing, disclosing, averting to, comprising, evidencing, constituting or reviewing.

9.      "Person" means a natural person, firm, association, partnership, corporation or other firm of legal or business entity, public or private.

10.     The singular includes the plural and vice versa; the words "and" and "or" shall be both conjunctive; the word "all" means "any and all"; the word "any" means "any and all"; the word "including" means "including, without limitation."

11.     All other words have their plain and ordinary meaning.

IN THE CIRCUIT COURT OF THE 16TH JUDICIAL CIRCUIT
IN AND FOR MONROE COUNTY, FLORIDA

MM182 LLC d/b/a CASA MORADA,

                  CASE NO.:  18-CA-000411-P

       Plaintiff,

vs.

ARCH SPECIALTY INSURANCE
COMPANY,

       Defendant.
_____/

## FIRST SET OF INTERROGATORIES

1.    Please provide a specific dollar amount reflecting the damages you are seeking for the subject claim and identify all reports, estimates, proposals, contracts, written agreements, change orders, invoices, receipts, correspondence or any other documents supporting or demonstrating your claim for these damages.

**ANSWER:**

2.    Please provide a specific dollar amount reflecting any and all repairs, renovations or modifications made to correct the damages you are seeking for the subject claim and identify all documents supporting or demonstrating your incurred expenses for these repairs.

**ANSWER:**

3.      Aside from those damages identified in interrogatories 1 and 2 above, please state whether you are seeking any other damages in this litigation and, if so, describe in detail the nature of these damages, the basis for seeking these damages, and identify in detail all estimates, proposals, invoices, statements, receipts, correspondence or any other documents supporting or demonstrating your claim for these damages.

**ANSWER:**

4.      Please identify the current members of the MM182 LLC d/b/a CASA MORADA. Please also identify each members' current primary physical address.

**ANSWER:**

MM182 LLC d/b/a CASA MORADA

By: _____

Print Name: _____

Title: _____

## **ACKNOWLEDGMENT**

STATE OF FLORIDA

COUNTY OF

BEFORE ME, the undersigned authority, personally appeared _____ on behalf of MM182 LLC d/b/a CASA MORADA, who is personally known to me **OR** who has produced _____* as identification, and who, after first being duly sworn, deposes and says that he/she has read the foregoing Answers to Second Interrogatories which were propounded to him/her by the _____ and to the best of his/her knowledge and belief are true and correct.

SWORN TO AND SUBSCRIBED before me, this _____ day of _____, 2018.

*List type of identification produced or "N/A," whichever is applicable.

(SEAL)

_____
NOTARY PUBLIC

State of _____ at Large

My Commission Expires:

IN THE CIRCUIT COURT OF THE 16TH JUDICIAL CIRCUIT
IN AND FOR MONROE COUNTY, FLORIDA

MM182 LLC d/b/a CASA MORADA,

        Plaintiff,

CASE NO.:  18-CA-000411-P

vs.

ARCH SPECIALTY INSURANCE
COMPANY,

        Defendant.

_____/

**ANSWER, AFFIRMATIVE DEFENSES AND DEMAND FOR JURY TRIAL**

COMES NOW, the Defendant, ARCH SPECIALTY INSURANCE COMPANY ("Arch"), by and through its undersigned counsel, and responds to the Complaint as follows:

1.      Admitted for jurisdictional purposes only, otherwise denied.

2.      Denied.  However, admitted that Plaintiff is a Florida limited liability company with its principal place of business in Islamorada, Florida.

3.      Denied.  However, admitted that Arch is a surplus lines insurance carrier that is incorporated in Missouri with a principal place of business in New Jersey. Further admitted that Arch conducts business in Monroe County, Florida.

4.      Admitted that venue is proper in Monroe County, Florida as the insured property is located in Monroe County, Florida.  Otherwise denied.

5.      Denied.  Specifically, Plaintiff did not provide certain information or documentation requested by Arch before filing suit including an estimate of its claimed building damages.

## **GENERAL ALLEGATIONS**

6.      Admitted that Arch issued policy number ESP 7303712-00 to the named insured, MMI 82, LLC d/b/a Casa Morada, containing the policy period of March 15, 2017 to March 15, 2018 that provides property insurance to the premises located at 136 Madeira Road, Islamorada, FL 33065 pursuant to all provisions, terms, and conditions of the policy.  Otherwise denied.

7.      Admitted that the property that is the subject of this lawsuit is located at 136 Madeira Road, Islamorada, FL 33065.  Otherwise denied.

8.      Admitted that the subject policy speaks for itself.  Otherwise denied.

9.      Admitted that the subject property suffered damage caused by Hurricane Irma on or about September 10, 2017.  Otherwise denied.

10.     Admitted.

11.     Admitted that Arch has made a claim payment of $100,000.00 for lost business income.  Otherwise denied.

12.     Denied.

13.     Admitted that Arch sought to investigate and adjust the loss.   Otherwise denied.

14.     Denied.

15.     Denied.

16.     Admitted that Plaintiff retained its attorneys.  Otherwise denied.

## **COUNT I**
## **BREACH OF CONTRACT**

17.     Arch readopts and realleges its responses to paragraphs 1 through 16 as if fully set forth herein.

18.     Admitted that Arch issued policy number ESP 7303712-00 to the named insured, MMI 82, LLC d/b/a Casa Morada, containing the policy period of March 15, 2017 to March 15, 2018 that provides property insurance to the premises located at 136 Madeira Road, Islamorada, FL 33065 pursuant to all provisions, terms, and conditions of the policy.  Otherwise denied.

19.     Admitted that Plaintiff paid its premiums.  Otherwise denied.

20.     Admitted that Arch has made a claim payment of $100,000.00 for lost business income.  Otherwise denied.

21.     Denied.   Specifically, Plaintiff did not provide certain information or documentation requested by Arch before filing suit including an estimate of its claimed building damages.

22.     Denied.

23.     Denied.

WHEREFORE, the Defendant, ARCH SPECIALTY INSURANCE COMPANY, respectfully requests judgment in its favor, costs of this action and such other relief as this Court deems appropriate under the circumstances.  Arch demands a jury trial on all issues so triable as a matter of right.

## COUNT II
## DECLARATORY JUDGMENT

25-34. These allegations, which are duplicative of the breach of contract count, are subject to Arch's pending Motion to Dismiss.  We note the Complaint omitted paragraph 24.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

Arch did not breach the insurance policy, so Plaintiffs' Complaint fails to state a cause of action for which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff prematurely filed suit in violation of the policy terms and conditions before even producing its own estimate of the claimed damages to the building. Plaintiff's premature filing of suit violated its Duties In The Event Of Loss Or Damage as Arch was actively requesting information from the Plaintiff including the details of what Plaintiff was claiming under the policy.  The policy states, in pertinent part:

### COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

* * *

**D.    LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Coverage Part unless:

**1.**    There has been full compliance with all of the terms of this Coverage Part;

* * *

**E.    Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

* * *

**3.    Duties In The Event Of Loss Or Damage**

**a.**    You must see that the following are done in the event of loss or damage to Covered Property:

\* \* \*

**(5)**     At our request, give us complete inventories of the damaged and undamaged property.    Include quantities, costs, values and amount of loss claimed.

**(6)**     As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

\* \* \*

**(8)**     Cooperate with us in the investigation or settlement of the claim.

\* \* \*

At a minimum, Plaintiff failed to produce responsive information and documentation to the following document requests:

1.     An inventory of damaged property (whether real or business personal) showing in detail, quantity, description, and amount of loss. Attach to the inventory all bills, receipts, and related documents that substantiate the figures in the inventory.

2.     All documents, including, but not limited to, maintenance records, appraisals,  damage reports, assessments, receipts, invoices, estimates, reports, evaluations, etc., concerning or documenting any repairs, performed or contemplated, to the insured property within the last three years.

3.     All documents, reports, correspondence, notes, calculations, diagrams, and the like that evidences or opines as to the cause or causes of the purported damages.

4.     All photographs and videotapes of the damages for which you are claiming insurance coverage.

5.     A list of all persons and/or entities who or which have knowledge of the damages related to this claim.

6.     All documents of whatever nature you believe support your claim for insurance benefits for the purported loss.

* * *

### THIRD AFFIRMATIVE DEFENSE

The policy contains certain requirements for payment of a covered loss on a replacement cost basis.  Arch will not pay on a replacement cost basis for any loss or damage: (1) Until the lost or damaged property is actually repaired or replaced; and (2) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.  The policy language regarding payment on replacement cost would become applicable if Plaintiff's claimed damages are deemed covered.

### FOURTH AFFIRMATIVE DEFENSE

Any payment for covered damages will be issued to those entitled to payment under the terms and conditions of the policy including the applicable clause that requires a mortgage holder to be included on any payment.

### FIFTH AFFIRMATIVE DEFENSE

The policy excludes damages caused by or resulting from wear and tear, rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself, settling, cracking, shrinking, or expansion pursuant to the following language:

2.     We will not pay for loss or damage caused by or resulting from any of the following:

* * *

d.     (1)     Wear and tear;

(2)     Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)**     Smog;

**(4)**     Settling, cracking, shrinking or expansion;

* * *

## SIXTH AFFIRMATIVE DEFENSE

The policy excludes loss or damage caused by or resulting from faulty, inadequate or defective design, specifications, workmanship, repair, construction, renovation, materials used in repair, construction, renovation or remodeling, or maintenance pursuant to the following policy language:

**3.**     We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.**  But if an excluded cause of loss that is listed in 3.a. through 3.c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

* * *

**c.**     Faulty, inadequate or defective:

**(1)**     Planning, zoning, development, surveying, siting;

**(2)**     Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**(3)**     Materials used in repair, construction, renovation or remodeling; or

**(4)**     Maintenance;

of part or all of any property on or off the described premises.

* * *

## SEVENTH AFFIRMATIVE DEFENSE

The policy contains a limitation that damages to the interior of any building or structure caused by or resulting from rain, whether driven by wind or not, are not covered unless the building or structure first sustains damage by a Covered Cause of

Loss to its roof or walls through which the rain enters pursuant to the following policy language:

    **C.**    **Limitations**

        The following limitations apply to all policy forms and endorsements, unless otherwise stated:

                \* \* \*

    **1.**    We will not pay for loss of or damage to property, as described and limited in this section.  In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

                \* \* \*

    **c.**    The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

        **(1)**    The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters;

                \* \* \*

If water damaged the interior of any building or structure and it did not enter through an opening caused by wind, it is not covered.

## EIGHTH AFFIRMATIVE DEFENSE

There is no coverage for damage to outdoor property caused by windstorm. Such outdoor property includes outdoor fences, radio and television antennas (including satellite dishes), trees, shrubs and plants including debris removal expense.  The applicable policy language is:

    **2.**    **Property Not Covered**

        Covered Property does not include:

                \* \* \*

**q.**    The following property while outside of buildings:

* * *

**(2)**    Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs or plants (other than "stock" of trees, shrubs or plants), all except as provided in the Coverage Extensions.

* * *

**5.    Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

* * *

**e.    Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), trees, shrubs and plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

**(1)**    Fire;

**(2)**    Lightning;

**(3)**    Explosion;

**(4)**    Riot or Civil Commotion; or

**(5)**    Aircraft.

* * *

## <u>NINTH AFFIRMATIVE DEFENSE</u>

The Named Windstorm Percentage Deductible Endorsement (Reported Value), form 00 EXP0195 00 03 15, applies.  Pursuant to all terms and provisions of this

endorsement, there is a 5% windstorm deductible applied to each building that sustains loss or damage subject to a minimum of $100,000.00 per occurrence.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff made a claim for lost business income and/or extra expense.  All terms and conditions of the policy forms relating to lost business income and/or extra expense, 00 EXP0094 00 08 14, apply.

## ELEVENTH AFFIRMATIVE DEFENSE

The subject policy excludes all damage by flood, and the flood exclusion contains anti-concurrent, anti-sequential policy language.  The policy states:

**B.    Exclusions**

    **1.**    We will not pay for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

* * *

    **g.**    Water

        **(1)**    Flood, surface water, waves (including tidal wave and tsunami), tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not (including storm surge);

* * *

## DEMAND FOR JURY TRIAL

Arch hereby demands trial by jury on all issues so triable.

## STATEMENT

Arch reserves its right to amend said Answer and Affirmative Defenses, including, but not limited to, asserting additional defenses.

WHEREFORE, the Defendant, ARCH SPECIALTY INSURANCE COMPANY, respectfully requests judgment in its favor, costs of this action and such other relief as this Court deems appropriate under the circumstances.

BUTLER WEIHMULLER KATZ CRAIG LLP

CHRISTOPHER M. RAMEY, ESQ.
Florida Bar No.:  0044808
cramey@butler.legal
Secondary:   lfarrell@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602
Telephone:   (813) 281-1900
Facsimile:   (813) 281-0900
*Attorneys for Arch Specialty Insurance Company*

## CERTIFICATE OF SERVICE

I certify that a copy hereof has been furnished to:

Anthony M. Lopez, Esq.
Joe R. De Prado, Esq.
Marin, Eljaiek, Lopez & Martinez P.L.
2601 South Bayshore Drive, 18th Floor
Coconut Grove, FL  33133
Mellaw3@mellawyers.com
Secondary:  dfg@mellawyers.com; jd@mellawyers.com
Attorneys For:  Plaintiff

by E-Portal on August 31, 2018.

CHRISTOPHER M. RAMEY, ESQ.

IN THE CIRCUIT COURT OF THE 16TH JUDICIAL CIRCUIT
IN AND FOR MONROE COUNTY, FLORIDA

MM182 LLC d/b/a CASA MORADA,

                CASE NO.:  18-CA-000411-P

      Plaintiff,

vs.

ARCH SPECIALTY INSURANCE
COMPANY,

      Defendant.

_____/

**DEFENDANT'S MOTION TO DISMISS COUNT II OF PLAINTIFF'S COMPLAINT**

COMES NOW, the Defendant, ARCH SPECIALTY INSURANCE COMPANY, ("Arch"), by and through its undersigned counsel, and files its Motion to Dismiss Count II of Plaintiff's Complaint and in support thereof, states as follows:

**I.**    **Facts**

1.    Arch issued a property insurance policy to Plaintiff that provides coverage to the insured property pursuant to its terms and conditions.  *See* Complaint at ¶6.

2.    Plaintiff reported a loss to Arch for property damage. *See* Complaint at ¶9.

3.    On or about May 25, 2018, Plaintiff filed a two-count Complaint against Arch. Count I is a breach of contract action and Count II for declaratory judgment.

4.    Count I, for breach of contract, alleges that Arch breached by failing to pay Plaintiff covered damages in relation to a property loss.  *See* Complaint at ¶22-23.

5.    Plaintiff then alleges that due to the breach, it retained counsel and requests attorney's fees and costs pursuant to Florida Statute §627.428.  *See* Complaint at WHEREFORE clause after ¶23.

6.    Plaintiff then demands declaratory relief in Count II that Arch continues to fail

to fully compensate for the loss, which is an alleged breach of contract, and that it allegedly is in doubt whether it has sufficiently complied with the policy.   The alleged lack of "compensation" is for the same damages addressed in Count I:

> 28.   Based upon its improper adjustment of the Insured's claim, the Insurance Company failed to issue payment in the proper amount to the Insured.

> 29.   The Insurance Company continues to fail to fully compensate the Insured for loss.

> **Need for Declaratory Relief**

> 30.   The Insured believes is [sic] in full compliance with the terms and conditions of the Policy.

> 31.   The Insured also believes that no further policy compliance is required as a result of the Insurance Company's breach of the Policy by failing to properly adjust and pay the Insured's claim.

> 32.   The Insured is entitled to have removed by judicial decree all doubts raised by the Insurance Company concerning whether the Insured has complied with the duties imposed upon under the Policy and the validity of the Insurance Company's demands under the Policy.

*See* Complaint at ¶¶28 through 32.

7.   Plaintiff then again demands the payment of reasonable attorney's fees.  *See* Complaint at WHEREFORE clause following ¶34.

8.   For the reasons described more fully below, Count II of the Complaint should be dismissed, as Plaintiff is, in actuality, seeking a judicial declaration that Arch has breached the contract, which is not a proper basis for seeking a declaratory judgment.

## II.   <u>Argument and Citation to Authority</u>

### A.   **Count II Should be Dismissed for Failing to State a Claim Upon Which Relief Can be Granted**

In order to demonstrate a right to proceed with an action seeking declaratory relief, "the party seeking a declaration must show that he is in doubt as to the existence or nonexistence of some right, status, immunity, power, or privilege and that he is entitled to have such doubt removed." *"X" Corp. v. "Y" Person*, 622 So.2d 1098, 1101 (Fla. Dist. Ct.

App. 1993) (citing *Flagship Real Estate Corp. v. Flagship Banks, Inc.*, 374 So.2d 1020 (Fla. Dist. Ct. App. 1979)).  Moreover, "[b]efore any proceedings for declaratory relief should be entertained it should be clearly made to appear that there is a bona fide, actual, present need for the declaration."  *Wells v. Wells*, 24 So.3d 579, 583 (Fla. Dist. Ct. App. 2009) (quoting *May v. Holley*, 59 So.2d 636, 639 (Fla. 1952)).

In Count II of the Complaint, Plaintiff purports to seek declaratory relief – a ruling by the Court that the Plaintiff does not need to further comply with policy conditions because Arch is in breach of contract.  However, the Complaint also asserts a breach of contract count.  Both counts are premised on the same factual dispute and seek a determination of coverage available for Plaintiff's claimed loss.  In such a circumstance, "Plaintiff will be able to secure full, adequate and complete relief through the breach of contract claim," and Plaintiff's claim for declaratory judgment should be dismissed.  *Fernando Grinberg Trust Success Int. Properties, LLC v. Scottsdale Ins. Co.*, No. 10-20448-Civ, 2010 WL 2510662, at *1 (S.D. Fla. June 21, 2010).  As explained in *Fernando Grinberg Trust Success Int. Properties*:

> A court may declare the rights and other legal relations of any interested party in the case of an actual controversy within its jurisdiction.  28 U.S.C. § 2201. Florida Statute Section 86.021 provides for the declaration of rights or status where a party to an agreement is in doubt as to his or her rights.  *City of Hollywood v. Fla. Power & Light, Co.*, 624 So.2d 285 (Fla. Dist. Ct. App. 1993).  The only relevant inquiry in a motion to dismiss a declaratory judgment action is whether or not the plaintiff is entitled to a declaration of rights.  *Toban v. Am. Sec. Ins. Co.*, No. 06-61912-Civ, 2007 WL 1796250, at *2 (S.D. Fla. June 20, 2007); *see also Gov't Emp. Ins. v. Anta*, 379 So.2d 1038, 1039 (Fla. Dist. Ct. App. 1980).  "[A] trial court should not entertain an action for declaratory judgment on issues which are properly raised in other counts of pleadings and already before the court, through which the plaintiff will be able to secure full, adequate and complete relief."  *McIntosh v. Harbour Club Villas*, 468 So.2d 1075, 1080-81 (Fla. Dist. Ct. App. 1985) (Nesbitt, J. specially concurring); *see also Taylor v. Cooper*, 60 So.2d 534, 535-36 (Fla. 1952).

*Id.*

"The Declaratory Judgment Act 'permits actual controversies to be settled before they ripen into violations of law or a breach of contractual duty.'" *Eisenberg v. Standard Ins. Co.*, No. 09-80199-CIV, 2009 WL 3667086, at *2 (S.D. Fla. Oct. 26, 2009) (quoting 10B C. Wright & A. Miller, *Federal Practice & Procedure*, Civil 3d § 2751 (2004)).  Asking the Court to declare whether Arch properly performed under the policy, however, is not a proper use of the declaratory judgment.  Where, as here, Plaintiff believes that the insurance policy provides coverage, then Plaintiff is actually seeking a judicial declaration that Arch has breached the policy.  As explained in *Eisenberg*:

> A petition seeking declaratory judgment that alleges breach of duties and obligations under the terms of a contract and asks the court to declare those terms breached is nothing more than a petition claiming breach of contract.  It thus provides an adequate remedy at law, and a decision on the merits of the breach of contract claim would render the [plaintiff's] request for declaratory judgment moot or redundant.

*Id.* at *2-3 (quoting *Amerisure Mut. Ins. Co. v. Maschmeyer Landscapers, Inc.*, 2007 WL 2811080 (E.D. Mo. 2007)).

Put simply, there is no need for such a judicial declaration because Plaintiff has not identified confusion, ambiguity or the need for judicial interpretation of the policy itself.  The proper cause of action for such a dispute lies in contract.  A judicial declaration is unnecessary and duplicative of the breach of contract claim in the Complaint.  It has been held that "[a] court must dismiss a claim for declaratory judgment if it is duplicative of a claim for breach of contract and, in effect, seeks adjudication on the merits of the breach of contract claim."  *Miami Yacht Charters, LLC v. National Union Fire Ins. Co. of Pittsburgh, PA*, No. 11-21163-CIV, 2012 WL 1416428, at *2 (S.D. Fla. Apr. 24, 2012) (citations omitted).

Plaintiff does not allege any ambiguity in the policy itself.  Instead, it seeks a determination of coverage, which is duplicative of the breach of contract count that is

premised on the allegation that Arch improperly breached the policy by not extending coverage for the Plaintiff's claim.  Consequently, even if all of the Plaintiff's allegations are taken as true, the allegations of contractual non-payment do not trigger the need for declaratory relief.  *Barrett v. Pickard*, 85 So. 2d 630, 631-632 (Fla. 1956) (holding that provisions of the instrument clear and free of ambiguities leaving only an issue of damages are not properly ascertainable under Declaratory Relief Statute); *Reddick v. Christie*, 226 So. 2d 434, 436-437 (Fla. Dist. Ct. App. 1969).

In sum, Plaintiff's claim for declaratory relief is duplicative of the claim for breach of contract.  Plaintiff has failed to articulate a separate bona fide, actual, present need for any declaration of rights.  As such, Count II of the Complaint should be dismissed as a matter of law.

WHEREFORE, the Defendant, ARCH SPECIALTY INSURANCE COMPANY respectfully requests that this Court grant its Motion to Dismiss Count II of Plaintiff's Complaint for failure state a claim upon which relief can be granted and for such relief as this court deems appropriate.

BUTLER WEIHMULLER KATZ CRAIG LLP

CHRISTOPHER M. RAMEY, ESQ.
Florida Bar No.:  0044808
cramey@butler.legal
Secondary:   lfarrell@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602
Telephone:   (813) 281-1900
Facsimile:    (813) 281-0900
*Attorneys for Arch Specialty Insurance Company*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that a copy hereof has been furnished to:

      Anthony M. Lopez, Esq.
      David F. Garcia, Esq.
      Marin, Eljaiek, Lopez & Martinez P.L.
      2601 South Bayshore Drive, 18th Floor
      Coconut Grove, FL  33133

by E-Portal on August 31, 2018.

 

_____

CHRISTOPHER M. RAMEY, ESQ.

CHIEF FINANCIAL OFFICER
JIMMY PATRONIS
STATE OF FLORIDA

MMI 82 LLC D/B/A CASA MORADA

PLAINTIFF(S)

VS.

ARCH SPECIALTY INSURANCE COMPANY

DEFENDANT(S)
_____ /

SUMMONS, COMPLAINT, DISCOVERY

| | |
|---|---|
| **CASE #:** | **18-CA-000411-P** |
| **COURT:** | **CIRCUIT COURT** |
| **COUNTY:** | **MONROE** |
| **DFS-SOP #:** | **18-000178422** |

# **NOTICE OF SERVICE OF PROCESS**

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer of the State of Florida. Said  process was received in my office by ELECTRONIC DELIVERY on Friday, July 27, 2018 and a copy was forwarded by ELECTRONIC DELIVERY on Wednesday, August 1, 2018 to the designated agent for the named entity as shown below.

ARCH SPECIALTY INSURANCE COMPANY
LYNETTE COLEMAN
1201 HAYS STREET
TALLAHASSEE, FL 32301

**\*Our office will only serve the initial process(Summons and Complaint) or Subpoena and is not responsible for transmittal of any subsequent fillings, pleadings, or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule  #1.080**

*Jimmy Patronis*

Jimmy Patronis
Chief Financial Officer

ANTHONY LOPEZ
2601 SOUTH BAYSHORE DRIVE - SUITE 850
COCONUT GROVE, FL 33133

JJ1

IN THE CIRCUIT COURT OF THE 16TH
JUDICIAL CIRCUIT IN AND FOR
MONROE COUNTY, FLORIDA

CASE NO.: 18-CA-000411-P

MMI 82 LLC d/b/a CASA MORADA,

        Plaintiff,

v.

ARCH SPECIALTY INSURANCE
COMPANY,

        Defendant.

_____/

## PLAINTIFF'S RESPONSES TO
## DEFENDANT'S REQUEST FOR PRODUCTION OF DOCUMENTS

Plaintiff, MMI 82 LLC d/b/a CASA MORADA (the "Insured"), hereby responds to Defendant's, ARCH SPECIALTY INSURANCE COMPANY (the "Insurance Company"), First Request for Production of Documents and in support thereof states as follows:

## RESPONSE TO FIRST REQUEST FOR PRODUCTION

1. All estimates, proposals, contracts, written agreements, change orders, invoices, receipts, correspondence or all other documents concerning the damages you are seeking in your insurance claim.
**ANSWER: Please see documents attached hereto.**

2. All contracts, change orders, proposals, invoices, receipts, statements, cancelled checks, investigative reports and all other records demonstrating repairs, renovations, modifications, or additions performed to the Subject Property from the date of purchase to the present date.
**ANSWER: Please see documents attached hereto.**

3. All records of expenses you have incurred that are part of your insurance claim.
**ANSWER: Please see documents attached hereto.**

4. All documents provided by any third party to the Plaintiff or its agents and/or representatives regarding the claimed damage to the Subject Property.

**ANSWER: Objection. This request seeks privileged information. However, without waiving said objection and in the spirit of cooperation, please see documents attached hereto.**

5. All appraisals, inspections, disclosures, or warranties obtained or provided pertaining to the insured premises.
**ANSWER: Please see documents attached hereto.**

6. All documents the Plaintiff contends support its insurance claim and complaint.
**ANSWER: Please see documents attached hereto.**

7. All documents supporting or demonstrating any awards, settlements and/or payments received from ARCH or any other source pertaining to the damages you are seeking in the insurance claim.
**ANSWER: Please see documents attached hereto.**

8. All documents supporting or demonstrating all insurance claims made by you and/or your representatives for any type of damage associated with Subject Property.
**ANSWER: Objection, this request seeks information for which the burden of obtaining the information requested is the same, or less burdensome, on the Defendant as it is on the Plaintiff.**

9. All photographs or videos which depict the alleged damage at the Subject Property on or after the claimed date of loss.
**ANSWER: Please see documents attached hereto.**

10. All photographs or videos which show the condition of the Subject Property prior to the claimed date of loss.
**ANSWER: None in possession.**

11. All documents identified, referenced, relied upon or indicated in Plaintiff's Answers to Defendant's First Set of Interrogatories.
**ANSWER: Please see documents attached hereto.**

12. All documents that evidence any ownership or other controlling or possessory interest by the members of MM182 LLC d/b/a CASA MORADA.
**ANSWER: None in possession.**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via Florida E Filing Portal to: Christopher M. Ramey, Esq. on this 2nd day of November, 2018.

**Marin, Eljaiek, Lopez & Martinez P.L.**
Counsel for the Insured
2601 South Bayshore Drive, 18th Floor
Coconut Grove, Florida 33133
Telephone No. (305) 444-5969
Facsimile No. (305) 444-1939
Email: Eservice@mellawyers.com
Secondary Email: Mellaw4@mellawyers.com

By: /s/ Joe DePrado
     Anthony M. Lopez, Esq.
     Florida Bar No. 13685
     Joe DePrado, Esq.
     Florida Bar No. 0127312

IN THE CIRCUIT COURT OF THE
16TH JUDICIAL CIRCUIT IN AND
FOR MONROE COUNTY, FLORIDA
CASE NO.: 18-CA-000411-P

MMI 82 LLC d/b/a CASA MORADA,

      Plaintiff,

v.

ARCH SPECIALTY INSURANCE COMPANY,

      Defendant.

_____/

## PLAINTIFF'S NOTICE OF FILING UNVERIFIED RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

Plaintiff, MMI 82 LLC d/b/a CASA MORADA (the "Insured"), hereby gives notice of the service of his answers and objections to Defendant's, ARCH SPECIALTY INSURANCE COMPANY, (the "Insurance Company"), First Set of Interrogatories numbered 1 through 4:

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via Florida E Filing Portal to: Christopher M. Ramey, Esq. on this 2nd day of November, 2018.

**Marin, Eljaiek, Lopez & Martinez P.L.**
Counsel for the Insured
2601 South Bayshore Drive, 18th Floor
Coconut Grove, Florida 33133
Telephone No. (305) 444-5969
Facsimile No. (305) 444-1939
Email: Eservice@mellawyers.com
Secondary Email: Mellaw4@mellawyers.com

By: /s/ Joe DePrado_____
    Anthony M. Lopez, Esq.
    Florida Bar No. 13685
    Joe DePrado, Esq.
    Florida Bar No. 0127312

## ANSWERS TO INTERROGATORIES

1. Please provide a specific dollar amount reflecting the damages you are seeking for the subject claim and identify all reports, estimates, proposals, contracts, written agreements, change orders, invoices, receipts, correspondence or any other documents supporting or demonstrating your claim for these damages.

**ANSWER: Objection. This interrogatory seeks expert conclusions. However, without waiving said objection, and in the spirit of cooperation, to the best of my knowledge, we are seeking $748,895.45 as a result of property damages. A more specific answer to this Interrogatory can be derived or ascertained from a review of the documents produced in Plaintiff's response to Defendant's Request for Production. Because the burden of deriving or ascertaining a more specific answer to this Interrogatory is substantially the same for Defendant as it is for Plaintiff, pursuant Fla.R.Civ.P. 1.340(c), Plaintiff directs Defendant to all documents attached thereto.**

2. Please provide a specific dollar amount reflecting any and all repairs, renovations or modifications made to correct the damages you are seeking for the subject claim and identify all documents supporting or demonstrating your incurred expenses for these repairs.

**ANSWER: To the best of my knowledge, I have performed temporary repairs in order to mitigate further damage. A more specific answer to this Interrogatory can be derived or ascertained from a review of the documents produced in Plaintiff's response to Defendant's Request for Production. Because the burden of deriving or ascertaining a more specific answer to this Interrogatory is substantially the same for Defendant as it is for Plaintiff, pursuant Fla.R.Civ.P. 1.340(c), Plaintiff directs Defendant to all documents attached thereto.**

3. Aside from those damages identified in interrogatories 1 and 2 above, please state whether you are seeking any other damages in this litigation and, if so, describe in detail the nature of these damages, the basis for seeking these damages, and identify in detail all estimates, proposals, invoices, statements, receipts, correspondence or any other documents supporting or demonstrating your claim for these damages.

**ANSWER: To the best of my knowledge, aside from those damages delineated in response to interrogatories 1 and 2, I am also seeking damages incurred as a result of business interruption. A more specific answer to this Interrogatory can be derived or ascertained from a review of the documents produced in Plaintiff's response to Defendant's Request for Production. Because the burden of deriving or ascertaining a more specific answer to this Interrogatory is substantially the same for Defendant as it is for Plaintiff, pursuant Fla.R.Civ.P. 1.340(c), Plaintiff directs Defendant to all documents attached thereto.**

4. Please identify the current members of the MM182 LLC d/b/a CASA MORADA. Please also identify each members' current primary physical address.

**ANSWER: Oneil R. Khosa- sole member**
**17710 Cadena Drive**
**Boca Raton, Florida 33496**

IN THE CIRCUIT COURT FOR THE 16TH
JUDICIAL CIRCUIT IN AND FOR
MONROE COUNTY, FLORIDA

MMI 82 LLC d/b/a CASA MORADA,                    CASE NO.: 18-CA-000411-P

        Plaintiff,

v.

ARCH SPECIALTY INSURANCE
COMPANY,

        Defendant.

_____/

## PLAINTIFF'S NOTICE OF FILING VERIFICATION PAGE

PLEASE TAKE NOTICE that Plaintiff, MMI 82 LLC d/b/a CASA MORADA, by and

through its undersigned counsel, hereby files the following:

    1.    MMI 82 LLC d/b/a CASA MORADA's verification page to its Notice of Filing

Unverified Responses to Defendant's, ARCH SPECIALTY INSURANCE COMPANY, First Set

of Interrogatories.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via Florida

E Filing Portal to: Christopher M. Ramey, Esq., on this 16th day November, 2018.

        **Marin, Eljaiek, Lopez & Martinez P.L.**
        Counsel for the Insured
        2601 South Bayshore Drive, 18th Floor
        Coconut Grove, Florida 33133
        Telephone No. (305) 444-5969
        Facsimile No. (305) 444-1939
        Email: Eservice@mellawyers.com
        Secondary Email: Mellaw4@mellawyers.com

        By: /s/ Joe DePrado_____
           Anthony M. Lopez, Esq.
           Florida Bar No. 13685
           Joe DePrado, Esq.
           Florida Bar No. 0127312

IN THE CIRCUIT COURT OF THE 16TH JUDICIAL CIRCUIT
IN AND FOR MONROE COUNTY, FLORIDA

MM182 LLC d/b/a CASA MORADA,

                              CASE NO.:  18-CA-000411-P

           Plaintiff,

vs.

ARCH SPECIALTY INSURANCE
COMPANY,

           Defendant.

_____/

**DEFENDANT'S NOTICE OF REMOVAL TO OPPOSING COUNSEL**

TO:    Anthony M. Lopez, Esq.
       David F. Garcia, Esq.
       Marin, Eljaiek, Lopez & Martinez P.L.
       2601 South Bayshore Drive, 18th Floor
       Coconut Grove, FL  33133

YOU ARE HEREBY NOTIFIED that Defendant, ARCH SPECIALTY INSURANCE COMPANY, in the above-styled action has, on this day, filed a Notice of Removal to the United States District Court for the Southern District of Florida, Key West Division.  A copy of the Notice of Removal is attached hereto as **Exhibit "A."**  The removal of the above-styled action to the United States District Court for the Southern District of Florida has been effectuated thereby.

Please serve the undersigned with copies of all pleadings that may be filed by you in the United States District Court for the Southern District of Florida pursuant to the removal of this cause and in accordance with the Federal Rules of Civil Procedure.

Dated this 29th day of November, 2018.

BUTLER WEIHMULLER KATZ CRAIG LLP

_____
CHRISTOPHER M. RAMEY, ESQ.
Florida Bar No.:  0044808
cramey@butler.legal
JUSTIN SBLANO, ESQ.
Florida Bar No.:  1008138
jsblano@butler.legal
Secondary:  lfarrell@butler.legal
                     ehorton@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602
Telephone:   (813) 281-1900
Facsimile:    (813) 281-0900
Attorneys for Defendant, Arch Specialty Insurance
Company

### CERTIFICATE OF SERVICE

I certify that a copy hereof has been furnished to:

Anthony M. Lopez, Esq.
David F. Garcia, Esq.
Marin, Eljaiek, Lopez & Martinez P.L.
2601 South Bayshore Drive, 18th Floor
Coconut Grove, FL  33133
Attorney For:  Plaintiff

by e-Portal on November 29, 2018.

_____
CHRISTOPHER M. RAMEY, ESQ.

IN THE CIRCUIT COURT OF THE 16TH JUDICIAL CIRCUIT
IN AND FOR MONROE COUNTY, FLORIDA

MM182 LLC d/b/a CASA MORADA,

                                  CASE NO.:  18-CA-000411-P

          Plaintiff,

vs.

ARCH SPECIALTY INSURANCE
COMPANY,

          Defendant.

_____/

**DEFENDANT'S CERTIFICATION AND NOTICE OF FILING NOTICE OF REMOVAL**

      PLEASE TAKE NOTICE that on November 29, 2018, Defendant, ARCH SPECIALTY INSURANCE COMPANY ("Arch"), in the above styled action, submitted to the office of the Clerk of the United States District Court for the Southern District of Florida, Key West Division, for filing a Notice of Removal pursuant to 28 U.S.C. § 1441-1452. A copy of the Notice of Removal is attached hereto as **Exhibit A**.

      Arch respectfully requests that this Court proceed no further with this action, unless this action is remanded to State Court.  Absent entry of a remand by the United States District Court for the Southern District of Florida, Key West Division, this court is divested of jurisdiction in this case and is thereby requested to stay all further proceedings in accordance with 28 U.S.C. § 1446 (d).

      Dated November 29, 2018.

1

BUTLER WEIHMULLER KATZ CRAIG LLP

CHRISTOPHER M. RAMEY, ESQ.
Florida Bar No.:  0044808
cramey@butler.legal
Secondary:  lfarrell@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602
Telephone:   (813) 281-1900
Facsimile:     (813) 281-0900
Attorneys for Defendant, Arch Specialty Insurance
Company

## CERTIFICATE OF SERVICE

I certify that a copy hereof has been furnished to:

Anthony M. Lopez, Esq.
David F. Garcia, Esq.
Marin, Eljaiek, Lopez & Martinez P.L.
2601 South Bayshore Drive, 18th Floor
Coconut Grove, FL  33133
Attorney For:  Plaintiff

by e-Portal on November 29, 2018.

CHRISTOPHER M. RAMEY, ESQ.